36 N.J. Super. 1 (1955)
114 A.2d 721
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF-RESPONDENT,
v.
MORRIS RUDD AND MRS. MORRIS RUDD, DEFENDANTS-APPELLANTS, AND CITY OF CLIFTON, IN THE COUNTY OF PASSAIC, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1955.
Decided June 1, 1955.
*2 Before Judges CLAPP, JAYNE and FRANCIS.
*3 Mr. Paul N. Belmont argued the cause for appellants (Messrs. Van Riper & Belmont, attorneys; Mr. Charles E. Villanueva, of counsel).
Mr. Walter Goldberg argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
This is a proceeding of conventional character in which the New Jersey Highway Authority in the exercise of its governmental power of eminent domain seeks the acquisition in fee simple of certain lands of the defendant Morris Rudd together with the interests of the other defendants therein situate in the City of Clifton, Passaic County. The plaintiff resolved that the lands were necessary in the construction of the Garden State Parkway and assumed possession of them by a declaration of taking on October 19, 1953.
The proceedings have progressed regularly. The award of the commissioners was in the sum of $20,750, from which both the plaintiff and the defendants appealed to the Law Division of this court where the jury determined the fair value of the lands as of October 19, 1953 to be $11,100. A conformable judgment was entered, from which the defendants, Mr. and Mrs. Rudd, appeal.
Initially it must be realized that the trial in eminent domain cases particularly in relation to the value of the property taken and to the determination of just compensation is essentially an informational inquisition in which the boundaries of the inquiry must for pragmatical reasons be liberally entrusted to the sound discretion of the trial judge. The limitations applied to the introduction of evidence should not be too technically contracted or so broadly stretched as to entertain a likely group of merely adventitious issues.
In the present case the jury availed themselves of the privilege of viewing the property. They doubtless comprehended the evidence which described the condition and configuration of the land as unimproved land fronting a distance of about 370 feet on Broad Street, sloping rearward about *4 265-290 feet to an ultimate decline of 20 to 26 feet into marsh land contiguous to the bed of the former Morris Canal. There is a city sewer pipe "exposed and in the air" extending from Board Street about 20 to 25 feet over the property from which water "would expel upon the property and flow down to the Canal."
The property is included in A2 residential zone. No residence has been erected on any part of it. A witness explained:
"Q. Do you know what the reason is that there haven't been any houses built?

* * * * * * * *
A. Yes. The one was held by estates, and the owner wanted too much money in the beginning for it. When Clifton first started to get developed, it could be used for farms, they could get a fair income out of it, so he wouldn't sell it."
To counterpoise in some degree the circumstances that the property had not been developed, the endeavor was made on behalf of the defendants to disclose that the governing body of the city had previously adopted a resolution declining to issue any building permits for the erection of houses in that area.
The trial judge probably envisioned from the permissible introduction of such evidence the prospect of an embarkation into an inquisition of the applications for such permits, if any, their futility, the specific reasons therefor, and above all, the validity of such a resolution. He denied the reception of such evidence. We conclude that in the state of the evidence the ruling was within the orbit of his discretion.
The next point debated pertains to the refusal of the court to permit the broker who negotiated the sale to state the purchase price for which the defendant Morris Rudd acquired the subject property in May 1946.
It may be immediately declared that in an eminent domain proceeding such as this evidence of the price which the owner paid for the subject property is not in all circumstances incompetent and inadmissible. Indeed, if it meets certain *5 qualifications it is said to be an exceedingly important piece of evidence. 5 Nichols, Eminent Domain 266, § 21.2.
Such evidence is subject to some of those qualifications applied to proof of sales of comparable property in that the sale of the subject property to the owner was bona fide, such as to exemplify the bargain of a willing seller and a willing buyer, and that the sale occurred within a reasonable time of the value date in the condemnation proceedings. Cf. In re Port of New York Authority, 28 N.J. Super. 575 (App. Div. 1953). Where the evidence of the sale to the owner possesses the requisite essentials and is not destitute of probative worth because of special circumstances, it is admissible. Jahr, Eminent Domain, § 136, pp. 209, 210; Nichols, Eminent Domain, supra; 1 Orgel, Eminent Domain 581, 582, § 136; 18 Am. Jur. 994, § 351; 29 C.J.S., Eminent Domain, § 273, p. 1267; 7 A.L.R.2d 774.
The reason that motivated the trial judge to exclude evidence of the purchase price is not definitely apparent in the transcript. Perhaps he regarded the sale in 1946 as too remote in time to be serviceable. In such event it must be recognized that his action was one particularly within the category of judicial discretion.
In the consideration of appeals our study of the record is dedicated to the ascertainment whether to deny a reversal of the judgment under review for the trial error would apparently be inconsistent with substantial justice and prejudicial to the substantial rights of the appellant. R.R. 1:5-3; 2:5.
In the present appeal (if we were to deem the alleged error required it), we cannot answer those considerations in the affirmative because we are uninformed by the record of the amount of the purchase price the defendants proposed to prove. It is not evident that counsel for the defendants imparted that significant information to the trial judge in his proffer of the evidence and in his overture for its admission. R.R. 4:44-3. To say that the revelation of the price in amount would have tended materially to influence the jury in returning an award more advantageous to the defendants is a mere conjectural speculation.
*6 In our opinion the ruling is not shown to have been of such a harmful and prejudicial consequence as to warrant the nullification of the final judgment.
The final point in the appellant's brief criticizes the distinguishable formulae employed by an adverse expert witness in evaluating the values of properties. We fail to observe any recorded objection or motion addressed to such testimony. Moreover the point seems to be projected to support here a contention that the verdict was contrary to the weight of the evidence. The record does not advise us that any application for a new trial was made to the trial judge. Vide, R.R. 1:5-3(a); 2:5.
The judgment is affirmed.