78 N.J. Super. 239 (1963)
188 A.2d 219
CITY OF EAST ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
PHYLLIS M. CRAWFORD, WILLIAM EATON AND RUTH EATON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 31, 1963.
*240 Mr. Jack Okin for the plaintiff (Mr. William L. Brach, attorney).
Mr. Frank P. Marano for the defendant Phyllis M. Crawford.
LABRECQUE, J.S.C.
The defendant Phyllis M. Crawford moves to set aside a jury verdict awarding compensation for the taking of her property located at the northeast corner of South Clinton and Chestnut Streets, East Orange, New Jersey, for public purposes. On appeal from the award of the condemnation commission, and after a trial de novo, the jury awarded damages of $18,500. The complaint was filed March 15, 1962, which was agreed upon as the date of the taking.
Various reasons were urged in support of the motion. All but one of these were decided adversely to the defendant at the hearing. The question remaining is whether the court unduly restricted the jury's consideration of an executed contract of sale for the premises in question.
*241 The defendant became the owner of the premises in question sometime in 1955. The improvement consisted essentially of two separate large, three-story houses which had been joined together. They had been operated as a rooming house, but this use was discontinued in 1958. In June 1959 she entered into a contract to sell the premises to William S. Eaton and wife for the sum of $23,500. Title was never closed, although Eaton testified that he had been ready, willing and able to take title at the agreed sales price. He retained counsel for the purpose of compelling specific performance of the contract, although it was not clear as to whether suit was actually instituted. In May 1961 it became apparent that the city intended to condemn the property in connection with a street widening project. When the parties failed to agree upon a price, condemnation proceedings were instituted.
There was evidence from which the jury could have concluded that after the making of the contract of sale, and particularly after announcement that the city intended to condemn the property, the property was not kept in repair and was subjected to a considerable amount of vandalism. This took the form of damage to doors, windows, floors, electric fixtures and plumbing, and involved damages from water which was permitted to enter through broken windows. The defendant, however, testified that the premises were, at the time of the institution of proceedings, in substantially the same condition as they had been at the time of the making of the contract and that such repairs as were necessary could have been completed at a cost of approximately $200.
At the trial, evidence as to the execution and delivery of the contract of sale was received over the objection of the city, but in the charge the jury was instructed that it could consider such evidence as bearing on the question of value only in the event that it found the condition of the property at the time of the execution of the contract to be substantially similar to its condition at the time of the taking. The defendant urges that this was error and that the evidence of the sale *242 having been admitted, the question of the weight to be accorded it should have been submitted to the jury without restriction.
In eminent domain cases the trial judge is allowed wide discretion in determining the admissibility of evidence bearing upon the value of the property taken. N.J. Highway Authority v. Rudd, 36 N.J. Super. 1 (App. Div. 1955); State v. Hudson Circle Service Center, Inc., 46 N.J. Super. 125, 132 (App. Div. 1957). Proceedings in cases of this nature have been defined as "essentially an informational inquisition in which the boundaries of the inquiry must for pragmatical reasons be liberally entrusted to the sound discretion of the trial judge." N.J. Highway Authority v. Rudd, supra, at page 3.
The majority rule, to which this State adheres, precludes the admission of testimony as to offers to purchase the property prior to the taking. N.J. Turnpike Authority v. Bowley, 27 N.J. 549, 556 (1958); Essex County Park Comm. v. Brokaw, 107 N.J.L. 110, 114 (E. & A. 1930); In re Port of New York Authority, 28 N.J. Super. 575, 583 (App. Div. 1953). The reasons for the adoption of the rule are numerous. The offer might have been made without serious intention or resources to support it. In the actual litigation, the offeror may be unavailable for examination as to his intent, his capacity to perform, or his motivation in offering to purchase the property in question. The opportunities for fraud and collusion are self-evident. It has also been noted that "The offeror may entertain contingencies and terms reserved for later serious discussion." N.J. Turnpike Authority v. Bowley, supra, at page 556. It is urged by the city that the same reasoning applies to contracts of sale, and that the contract in question should have been excluded. Alternatively, it contends that the court properly restricted its consideration by the jury in the manner indicated.
The question of the admissibility, on behalf of the condemnee, of a binding contract for the sale of premises sought *243 to be condemned appears to be one of novel impression in this State. It was raised in N.J. Turnpike Authority v. Bowley, supra, but our Supreme Court, while noting that there was little authority on the point (p. 557), found it unnecessary to pass upon it in that case.
Our Constitution requires that an owner whose property is being taken for public use shall receive just compensation. The measure of just compensation is that familiar and flexible concept which the law has denominated "fair market value." In establishing a working rule for arriving at such value our courts have held that it "may be measured by the price which, in all probability, would voluntarily be agreed upon in fair negotiations between an owner willing (but not forced) to sell and a buyer willing (but not forced) to buy; * * *." City of Trenton v. Lenzner, 16 N.J. 465, 476 (1954); State v. Gorga, 26 N.J. 113, 115 (1958); State v. Burnett, 24 N.J. 280, 288 (1957). While necessarily indefinite, this concept supplies a flexibility "which will best serve to attain the goal in eminent domain proceedings of `"justice and indemnity in each particular case."'" City of Trenton v. Lenzner, supra, at page 476.
The determination of what facts are relevant and helpful in determining fair market value has developed through a case-by-case process, with reasonable discretion at all times being allowed to the trial judge. Thus a bona fide sale of comparable property between a willing seller and a willing buyer has been held to be evidential of value where the property was substantially similar in characteristics of value and locality and the sale occurred within a reasonable time of the date of taking. Manda v. Orange, 88 N.J.L. 686 (E. & A. 1912); In re Port of New York Authority, supra, 28 N.J. Super., at pp. 580-581. The test of comparability in such cases has been held to be "whether the conditions are such as readily to admit of reasonable comparison between the land taken and the lands so sold." Id. The price of the acquisition by the owner of the very property sought to be acquired in condemnation has likewise been held to be admissible where *244 the sale was bona fide and took place within a reasonable time. N.J. Highway Authority v. Rudd, supra, 36 N.J. Super., at pp. 4-5. It would seem to logically follow that, in the absence of a completed sale, evidence of the price agreed upon in a binding contract of sale for property between the owner and a purchaser, both acting in good faith, would be of substantial significance in arriving at the fair market value of such property. However, many objections to the admissibility of such evidence have been raised, generally based upon the opportunities for fraud and collusion presented thereby.
In United States v. Certain Parcels of Land in City of Philadelphia, 144 F.2d 626, 155 A.L.R. 253 (3 Cir., 1944), which was referred to by our Supreme Court in N.J. Turnpike Authority v. Bowley, supra, the issue was directly raised and passed upon. In that case a binding agreement for the sale of certain lands had been entered into. Pending the closing of title the Government instituted proceedings to acquire them by eminent domain. At the trial, the contract of sale was offered in evidence as bearing upon the question of the compensation to be paid. Its rejection was held to be a ground for reversal, the Court of Appeals holding that it should have been received as evidence to be considered by the jury in arriving at just compensation. In passing upon the objections commonly raised to the receipt of this type of testimony, the court logically points out:
"* * * It is true that the contract had not been consummated and that, as argued by the government, reception of such evidence makes it possible for a landowner, learning that condemnation of his property is likely, to enter into a collusive agreement of sale so as to manufacture evidence in support of an exorbitant claim. This danger is not to be minimized, particularly in view of the difficulty which might be entailed in proving such collusion. Yet evidence of a bona fide sale, otherwise relevant, should not be excluded because of the possibility that some landowner might conspire with another to defraud the government by manufacturing collusive evidence. Such objections go to the weight of such evidence rather than to its admissibility, and the trial affords opportunity, both by cross-examination and comment to the jury, to bring such evidence to its proper perspective for the jury's consideration. The penalties of the *245 criminal law also will afford a deterrent to such persons without depriving others of significant evidence of the value of their property in condemnation proceedings."
It is significant that the test which was to be applied in arriving at just compensation in the cited case was identical with that used in New Jersey, i.e., what a willing buyer would pay a willing seller. State v. Gorga, supra, 26 N.J., at p. 115; State v. Burnett, supra, 24 N.J., at p. 288. The conclusions reached in the cited case appear to be in accord with most of the jurisdictions in which the question has been considered. Annotation, 155 A.L.R. 262 (1945); Brush Hill Development, Inc. v. Commonwealth, 338 Mass. 359, 155 N.E.2d 170 (Sup. Jud. Ct. 1959); In re Hamilton Place, 67 Misc. 191, 122 N.Y.S. 660 (Sup. Ct. 1910). But see contra, School Dist. of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860 (Sup. Ct. 1946).
Evidence of the price at which one claiming compensation for lands taken has formally bound himself to sell the lands in question to a third person, at least equals in relevancy evidence of the sale price of comparable lands. Objections based upon the weight to be accorded such evidence should not preclude its admission in an appropriate case. United States v. Certain Parcels of Land, supra. Its admissibility is subject to the same qualifications as are applicable to proof of a completed sale of the subject premises. See N.J. Highway Authority v. Rudd, supra, at p. 5. Upon a favorable resolution of the question of admissibility, its weight is for the jury.
In the case sub judice the court properly allowed testimony as to the contract of sale but restricted the jury in its consideration of such testimony. It was instructed that it could not consider the evidence unless it found that the condition of the property at the time of the making of the contract of sale was substantially similar to that which existed at the time of the taking. The jury should not have been so restricted. Like evidence of comparable sales, evidence of a contract of sale, although not conclusively determinative *246 of the value of the property taken, is serviceable in estimating the weight to be accorded the opinion of the experts and furnishes a clue to the just appraisal of the property the value of which is in question. In re Port of New York Authority, supra, 28 N.J. Super., at p. 581. A jury is entitled to consider it, together with all other evidence in the case, as bearing upon the question of value. Especially was this true in the instant case where the price paid for the premises by the defendant at an even more remote date (1955) was testified to without objection. It was for the jury to determine the weight to be accorded the price reflected by the contract of sale, taking into consideration any difference between the physical condition of the property at the time of the contract and that at the time of the taking.
For the foregoing reason, the verdict of the jury is set aside and a new trial granted. Counsel may submit an order in conformity with these findings. No costs.