RIMM, J.T.C.
These two local property tax matters, both concerning the same properties and consolidated for trial purposes, involve assessments for the tax year 1985.[1] The subject properties consist of Block 99, Lots 31 and 32, and Block 106, Lot 1. For the tax year 1985, the assessments were as follows:
Block 99, Lots 31 and 32 Block 106, Lot 1
Land $93,500 $281,690
Improvements —0— —0—
Total $93,500 $281,690.
The total assessment for the vacant land was therefore $375,-190.
The taxpayer, U.S. Life Realty Corp., was dissatisfied with the assessments and filed a petition with the Ocean County Board of Taxation seeking reductions. The county board entered a judgment affirming the assessments on the ground that there was insufficient evidence to overcome the presumption of correctness of the assessments. Thereafter, the taxpayer filed a complaint in the Tax Court demanding judgment reducing the assessments. The municipality then filed a complaint demanding judgment increasing the assessments.
The subject properties are at the intersection of Leesville Road and Cassville-Freehold Road. Block 99, Lots 31 and 32 lie to the east of Leesville Road and to the north of Cassville-Freehold Road. Block 106, Lot 1 lies to the east of Leesville Road and to the south of Cassville-Freehold Road. Although the two tracts are divided by Cassville-Freehold Road, the parties valued them together and treated them as one parcel for local property tax assessment purposes.[2]
*69 According to the taxpayer’s appraisal marked in evidence, Block 99, Lots 31 and 32 consist of approximately 55 acres, including a three-to five-acre pond. These lots have approximately 820 feet of frontage on Leesville Road and 1,800 feet of frontage on Cassville-Freehold Road. Block 106, Lot 1 contains 165.7 acres. It has road frontage of 850 feet on Leesville Road, 3,150 feet on Cassville-Freehold Road, and 600 feet of frontage on Pleasant Grove Church Road along a portion of the southerly boundary of the lot. The tax map shows the indicated acreage, totaling 220.7 acres. The appraisal also states that this is at variance with the legal description of 230 acres. The appraisal then says, “[f]or appraisal purposes, we have adopted the total area contained in the legal description.” However, the appraisal opinion of value is based on an area of 218.6 acres. In oral testimony, plaintiff’s appraiser testified that the latter acreage is based on a survey of the property.
Both parcels are surrounded by vacant land except for three houses which are adjacent to the southerly boundary of Block 106, Lot 1 along Pleasant Grove Church Road. The parcels are generally at grade with the existing road frontages, relatively flat and heavily wooded and contain some low-lying areas. A stream runs through part of both parcels. Electric and telephone service are available at the site. An interceptor line of a regional sewer system is located approximately three-and one-half miles northeast of the lots. Individual water wells are required for a water supply. Large scale use of individual septic tanks on the subject property is questionable as is the construction of a sewerage treatment plant.
Plaintiff’s evidence of the zoning requirements applicable to the subject property was as follows:
1. According to the appraisal, “The subject is zoned Rural Residential R-20,” with a minimum lot area requirement of “1 acre.”
2. The appraisal’s “Summary of Salient Facts and Conclu- • sions” indicates: “Zoning: Rural Residential requiring a minimum lot area of 40,000 square feet.”
*70 3. The appraiser testified, however, that the subject property is partially in the R-40 zone and partially in the R-20 zone. Although the appraiser did not indicate the area of the property in each zone, he said that the “bulk” of the land was in the R-40 zone.
4. The witness also testified that the R-40 zone has a minimum lot size requirement of three acres and that the R-20 zone has a minimum lot size requirement of one acre.
5. Other testimony from plaintiffs appraiser was that the R-40 zone had a “three to 3.5 acre lot minimum for residential development.”
6. The witness also said that the R-20 zone had a minimum lot size requirement of 40,000 square feet.
7. The witness then said:
Because the bulk of the property falls into the R-40 zone which gives a lower density of development to the subject property, it is not an advantageous zone to be in. The R-20 zone would be more advantageous. However, the majority of the property does not fall within the R-20 zone.
8. On cross examination, in response to a question as to whether the R-40 zone requires lots with a minimum size of 40,000 square feet, plaintiffs appraiser testified that the minimum lot size requirement of the zone was three acres.
9. On cross examination, he also repeated that “R-20 was one acre.”
10. Marked in evidence during plaintiffs case was the zoning map of Jackson Township with “revisions per conditional certification” as of March 23, 1983. Among other zones indicated on the map are the R-20 residential zone, the R-40 residential zone and the TC town center residential zone. The subject property may be readily identified on the map.
Since the subject property is vacant land, plaintiffs appraiser used the market data approach. His appraisal lists 14 sales which “most significantly pertain to the property under appraisal.” After the presentation of information on the 14 sales, the sale of the subject property is also considered, and the appraisal *71 states that the value determination is “based upon the adjusted market sales and the sale of the subject property.”
An analysis of the sales by the appraiser indicated unadjusted sales prices ranging from a low of $1,318 an acre to a high of $5,750 an acre. In the words of the appraisal, “[t]he higher end of the range, unadjusted, is indicative of sales on main county roads in superior locations with all utilities and parcels ten per cent the size of the subject.” Nine of the sales fall in this group and are not comparable for valuation purposes, even in the opinion of plaintiff’s own expert.[3] “Evidence of comparable sales is effective in determining value only where there is substantial similarity between the properties so as to admit of reasonable comparison. Venino v. Carlstadt Bor., 1 N.J.Tax 172 (Tax Ct.1980).” Newark v. Cedar Grove Tp., 7 N.J.Tax 66, 76 (Tax Ct.1984). To the same effect is Inmar Associates, Inc. v. Edison Tp., 2 N.J.Tax 59 (Tax Ct.1980), in which the court said that substantial similarity is “fundamental” if the evidence is to be helpful in the search for true value.
Of the remaining five sales, one was described in the appraisal as “not arms length related parties.” The other four of these sales involve properties which are not comparable to the subject property on the basis of the evidence before the court. One sale involves a single building lot in a subdivision. No area is indicated for two other sales and it would appear that at least one is also a single building lot. The fifth sale involves property indicated in the appraisal to be in the “IB-3” zone. There is nothing in the appraisal which describes that zone; no such zone appears on the zoning map; and there was no testimony indicating whether such zoning is comparable to the zoning of the subject property.
*72 In his oral testimony, the appraiser said that, because the subject was of such a large size and lacked utilities and sewerage, it was very difficult to find sales of comparable properties in that area. He did, however, say that he found sales in the township of properties which had some “comparable characteristics to the subject property.” He analyzed the sales, “weighed all the basic elements of each one of those sales” such as size, availability of utilities and sewerage and time of sale. He thereupon concluded that the market value of the subject property was $1,500 an acre. The witness also testified that, with regard to one sale, he made no adjustments in its sale price but included the sale in his appraisal to illustrate that he had examined all the sales of vacant land in the area. The witness acknowledged that there was no sale involving a property similar in size to the subject property and that “there certainly was not a single sale in here which was close in physical configuration.”
I find as a fact that none of the 14 sales are comparable to the subject. In using these sales, plaintiff has not overcome the presumption of correctness in favor of the county board judgment, and the complaint should be and is dismissed. “On appeal to the ... [Tax Court] there is a presumption in favor of the correctness of the county board judgment, Riverview Gardens v. North Arlington, 9 N.J. 167 [87 A.2d 425] (1952).” Spiotta Brothers v. Mine Hill Tp., 1 N.J.Tax 42, 51 (Tax Ct.1980). See also Glenwood Realty Co., Inc. v. East Orange, 78 N.J.Super. 67, 70, 187 A.2d 602 (App.Div.1963).
Comparability does not, of course, require that two properties be identical. By definition, in the market approach to value, differences between a comparable property and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other.
*73 Here, even if the properties were to be considered as comparable to the subject, the expert witness’ opinion of value would have to be rejected because there is no evidence before the court of the methodology used in adjusting the comparables to the subject to determine value. Although the witness said he made adjustments, no explanation was given of the adjustments, and I find as a fact that, based on the totality of plaintiff’s evidence, no adjustments were made in any manner acceptable in the appraisal field. Adjustments should be expressed in either percentages or in dollars. American Institute of Real Estate Appraisers, The Appraisal of Real Estate, (8 ed. 1983) 317. See also J.C. Penney Co., Inc. v. Lawrence Tp., 8 N.J.Tax 473 (Tax Ct.1986). Yet on one occasion the witness said he merely listed the sales to indicate a price range. On another occasion he said he made no adjustments in the comparables to the subject property.
With regard to the sale of the subject property, the appraiser’s testimony was essentially that he relied on the subject sale as the basis of his opinion of the value of the subject property, observing that the sale of a property is the best indication of its value. The witness also said that the other sales were used merely to show sales of vacant land in the municipality and did not influence his opinion of the value of the subject property.
The sale of the subject property must be considered in attempting to arrive at an estimate of value of the subject for local property tax assessment purposes. Kazanchy v. Sea Bright Bor., 6 N.J.Tax 622 (App.Div.1984) (Appellate Division directed further consideration of the value of the property in light of its sale). See also Glen Wall Associates v. Wall Tp., 99 N.J. 265, 281, 491 A.2d 1247 (1985) (“[T]he Tax Court should have considered the sale of the property as an indication of true value.”).
*74 The subject property was sold by plaintiff by an agreement of sale dated November 25,1985.[4] The sale price was $827,900, and title was transferred from plaintiff on July 9, 1986. Although plaintiff’s witness indicated that the sale of the subject property was only one consideration in determining value, he also said that the sale “had the greater weight of all of the evidence available” to him.
The witness testified that he had been retained as a consultant to advise the property owner as to a proper price for the sale of the property and he did so. The property owner had received an offer of $1,000 an acre and an offer of $1,500 an acre. The witness’ company was asked to establish a value for the subject property in connection with these offers and the sale of the property. The witness testified that, after investigation, he advised the property owner that the $1,500 an acre offer was the correct price and more indicative of market value. Ultimately, the agreement referred to was entered into at $1,500 an acre and the property was sold at that price. In giving his advice, the appraiser relied on the same basic information that is in his appraisal in the present matter.
As indicated, while the sale of the subject is to be considered in determining value—it is, after all, the sale of the best “comparable”—the sale itself must be scrutinized as any other sale. For example, the sale of a property would be rejected as evidence of its value if the sale were not an arm’s length transaction.
In this case the sale of the subject property is rejected as evidence of its value. The sale price of $1,500 an acre was approved by the appraiser after “investigation.” The appraisal according to the witness, was essentially prepared in connection with the sale, and the sale price was determined by the same appraisal procedure used in this case. In effect, evidence of the subject sale is nothing more than the presentation, in another form, of the appraisal used in this case, which appraisal has *75 been rejected. Evidence of the sale as an indication of the value of the subject property is rejected for the same reasons that the appraisal is rejected.
The evidence of the sale is also rejected on the basis of Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 65 A.2d 828 (1949), in which the court said:
A selling price is a guiding indicium of fair value and ordinarily is merely evidential although it might under peculiar circumstances become controlling, subject to the limitation that the determination properly involved the weighing and appraising of all component factors and adventitious circumstances. [Id. at 162-163, 65 A.2d 828]
A component factor and adventitious circumstance involved in the sale of the subject property is that the sale price was fixed in reliance on data which could not, in accordance with proper appraisal practice, be used to determine the property’s value. The seller was, in fact, an uninformed seller.
In a local property tax assessment matter, “[t]he search, of course, is for the fair value of the property, the price a willing buyer would pay a willing seller.” New Brunswick v. Division of Tax Appeals, 39 N.J. 537, 543, 189 A.2d 702 (1963). This willing buyer—willing seller concept presupposes an informed buyer and an informed seller because market value is more completely defined as:
The most probable price in cash, terms equivalent to cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress. [The Appraisal of Real Estate, supra at 33; emphasis supplied]
This definition has been quoted with approval by our courts. Glen Wall Associates v. Wall Tp., supra, 99 N.J. at 282, 491 A. 2d 1247; Presidential Towers v. Passaic City, 6 N.J.Tax 406, 412 (Tax Ct.1984); West Deptford Tp. v. Gloucester Cty. Bd. of Tax., 6 N.J.Tax 79, 86 (Tax Ct.1983). See also Almax Builders, Inc. v. Perth Amboy City, 1 N.J.Tax 31 (Tax Ct.1980) (very little weight given to sale of subject property because the sale of the subject property did not fall within the hypothetical “willing seller” definition); Nitkan Realty Co. v. Passaic City, *76 1 N.J.Tax 393, 399 (Tax Ct.1980) (the price for which the subject property was sold not indicative of the property’s true value).
The definition is also essentially the same as the definition of market value contained in the appraisal. After setting forth the definition, the appraisal says that “implicit in this definition is the consummation of a sale ... from seller to buyer under conditions whereby: ... 2. both parties are well informed or well advised,____” Emphasis supplied.
The assessor was the municipality’s only witness. He gave evidence concerning the zoning of the subject property and referred to the zoning map marked in evidence in plaintiff's case. He testified that seven acres of the entire tract is in the TC zone. This zone is designated town center residential zone, and, according to the witness’ testimony, multi-family dwellings may be constructed on land in the zone. The balance of the entire area of the subject property, approximately 213 acres, is in the R-40 zone, which is designated as a residential zone. The R-40 zone has a minimum lot size requirement of 40,000 square feet, or approximately one acre, with a minimum lot frontage of 100 feet. The witness also testified that the R-20 zone is also a residential zone and has a minimum lot size requirement of 20,000 square feet, or approximately one-half acre, with minimum lot frontage of 100 feet required. Based on this testimony, I find that: (1) the subject property is in the R-40 zone except for approximately seven acres which are in the TC zone; (2) the R-40 zone has a minimum lot size requirement of 40,000 square feet, and (3) multi-family dwellings are permitted on the seven acres of the subject property in the TC zone.
From these findings, it is apparent that plaintiff’s appraiser erred in his testimony on zoning. He specifically testified that the three-acre zone in which he believed the subject property to be located had an adverse effect on its value. In fact, the property is not subject to three-acre zoning. Nor is any part of the property in the R-20 zone and so reference to that zone in plaintiff's presentation is meaningless. Finally, no considera *77 tion was given by plaintiffs expert to the seven acres in the TC zone.
Plaintiffs counsel argues in a post-trial brief that, since the appraiser used comparables in the R-40 zone and used prices of properties in the R-40 zone, his errors do not make any difference to the outcome.
In the first place, the comparables have already been rejected as comparables. Secondly, of the 14 sales, only five are in the R-40 zone, one of which is the “not arms length related parties” sale to which I have already referred. The four remaining sales have prices ranging from a low of $2,558 an acre to a high of $5,750 an acre. There is no way to determine just how the appraiser’s opinion of the disadvantageous zoning requirements influenced his ultimate opinion of value of $1,500 an acre. The confusion on the part of the appraiser with regard to zoning casts grave doubt on the credibility of plaintiff’s entire evidence.
The assessor also testified that it was his opinion that the subject property had a fair market value of $882,800 as of the critical assessing date based on a value of $4,000 an acre and a total acreage of 220.7 acres. The opinion of value was arrived at by an analysis of sales of properties which the assessor said were comparable to the subject property. In reaching his opinion of value, the assessor relied on five sales. The first sale involved a tract of land which had both public sewer and water at the time of the sale and was, in the assessor’s words, “quite some distance from the subject property.” Sale number three is located in the TC zone, which the witness had already described as a zone permitting more density than the R-40 zone. Sale number five has public sewer and “the possibility of water.”
On cross examination the witness testified that he only adjusted the first sale for time and did not make any adjustment for his opinion that the property was superior to the subject property nor for the fact that the sale property had sewer and water available to it and the subject did not. With *78 respect to sale number two, the witness agreed that the allegedly comparable property was one-fourth the size of the subject property. He also did not know of any of the terms or conditions of the sale nor whether there were any contingencies regarding the agreement of sale. The witness also said that he did not consider, when using sale number two, that the property involved in that sale abutted an already developed area. Sale number four involved the payment of $400,000 in cash with the balance paid by the execution and delivery of a purchase money mortgage from the purchaser to the seller. The witness did not know the terms of the mortgage. In addition, although he considered the comparable property superior to the subject property, he made no adjustment except for time and for the fact that there was a house on the property which he valued and considered in arriving at his value for the land.
The witness also testified to a contract of sale for a sixth property. Although it is not evidence of a consummated comparable “sale,” such evidence is admissible with the trier of the facts to determine what weight, if any, is to be accorded the contract.
Evidence of the price at which one claiming compensation for lands taken has formally bound himself to sell the lands in question to a third person, at least equals in relevancy evidence of the sale price of comparable lands. Objections based upon the weight to be accorded such evidence should not preclude its admission in an appropriate case. United States v. Certain Parcels of Land, supra [144 F.2d 626 (3rd Cir.1944) ]. Its admissibility is subject to the same qualifications as are applicable to proof of a completed sale of the subject premises. See N.J. Highway Authority v. Rudd, supra, [36 N.J.Super.] at p. 5 [114 A.2d 721 (App.Div.1955) ]. Upon a favorable resolution of the question of admissibility, its weight is for the jury. [East Orange v. Crawford, 78 N.J.Super. 239, 245, 188 A.2d 219 (Law Div.1963) ]
Tax Court cases are to the same effect. Sage v. Bernards Tp., 5 N.J.Tax 52 (Tax Ct.1982); Olin Mathieson Chem. Corp. v. Paulsboro, 3 N.J.Tax 255 (Tax Ct.1981).
In the present case, the assessor only made a time adjustment to the contract price, although he acknowledged on cross-examination that the contract property was superior to the subject because of existing permission for septic tanks and water wells. In addition, the witness had never seen the *79 contract and did not know the terms of the purchase money mortgage provided for in the contract. Accordingly, very little weight is given to evidence of the contract of sale and it cannot be the basis of a value determination in this case.
There is not the same problem of credibility with the municipality’s evidence that there is with taxpayer’s evidence, but, in terms of comparability, the municipality’s evidence can fare no better. The sale properties are not sufficiently comparable to allow a determination of value in the market data approach to value. The municipality’s complaint is also dismissed.
In Glen Wall Associates, supra, the Court said:
The Tax Court’s decision places an onerous burden on the taxpayer and ignores the time and expense such a burden imposes on a litigant. In this day of rising litigation expenses, it is important for the courts to adopt reasonable limits on what is to be expected of a litigant in presenting his case through the use of an expert. [99 N.J. at 284, 491 A.2d 1247]
A taxpayer must nevertheless produce the requisite evidence to establish the right to a reduction in an assessment. Evidence of 14 sales does not necessarily establish such a right, because it is the quality of evidence and not the quantity of evidence alone which is dispositive. Here the quality of plaintiff’s evidence is woefully “inadequate” to prove value. Cf. Presidential Towers v. Passaic City, supra, 6 N.J.Tax at 417.
The statement in Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965) that “it became incumbent upon the Division to appraise the testimony, make a determination of true value and fix the assessment” does not require a different result than that reached in the present case. Id. at 75. The obligation to determine true value only occurs when there is “enough substantial and competent evidence” to overcome the presumption of correctness. Id. at 74, 208 A.2d 153. In the present case, neither party presented enough substantial and competent evidence to overcome the presumption of correctness in favor of the county board judgment. It is impossible to determine the value of the subject property from the evidence, and I will not arbitrarily assign a value to the property not supported in the record.
*80 Finally, my consideration of the municipality’s evidence on zoning was for the purpose of showing the confusion in plaintiff’s case and not because plaintiff overcame the presumption of correctness.
The Clerk of the Tax Court will enter judgments dismissing each complaint.

Although there are two complaints, the word “plaintiff' is used to designate the taxpayer, U.S. Life Realty Corp.

The subject properties will hereafter be referred to as one property.

One of these sales has a price of $150,000, an area of 5.66 acres and the appraiser’s indicated price of $2,650 an acre, an obvious error, probably in the appraiser’s mathematics: $150,000 5.66 = $26,501. No further evidence was presented on this sale. If it were comparable, it would certainly indicate that the opinion of value is in error.

For purposes of the result in this case, the date is of no moment. Further, plaintiff apparently had the right to pursue this litigation.