TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax: (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

February 5, 2018

**UPLOADED AND BY FIRST-CLASS MAIL**
Jonathan Bleier, Self-Represented
Lakewood, New Jersey

**UPLOADED**
Lani Lombardi, Esq.
Cleary Giacobbe Alfieri Jacobs, L.L.C.
251 Preventorium Road, P.O. Box 580
Howell, New Jersey 07731

> Re:  Bleier v. Township of Lakewood
> Block 25, Lot 32
> Docket No. 009547-2017

Dear Mr. Bleier and Counsel:

This letter constitutes the court's decision following trial of the above captioned matter. Plaintiff owns a residence, the above-captioned property ("Subject"), in defendant ("Township"). For tax year 2017, plaintiff petitioned the Ocean County Board of Taxation ("County Board") to reduce the Subject's local property tax assessment from $582,900[1] (allocated $236,000 to land, and $346,900 to improvements) to $470,000.[2]  The County Board reduced the assessment to $575,000 using judgment code 1A ("assessed value exceeds 100%").  For the reasons below, the court affirms the County Board's judgment.

---

[1] For tax year 2017, the Township underwent a district-wide revaluation.
[2] The assessment for tax years 2014-2016 was $432,900 (allocated $206,900 to land and $226,000 to improvements). Plaintiff claimed that this was due to his appeal of a prior revaluation which had set the assessment at $536,000.

*

The Subject is a single family residence consisting of a two-story building with four bedrooms and 3½ baths with a total gross living area ("GLA") of about 2,900 square feet ("SF") on a lot sized 73x100 SF. There is a basement but no garage. The home has 8' ceilings and per plaintiff is too nice to be knocked down. Plaintiff agreed that he added a room to the house about 14 years ago. He maintained that the house, though located on a dead-end street, faced the county line, thus making ingress and egress to/from his house tedious due to the traffic volume.

Plaintiff relied upon four comparables, all of which were in the Township, and their sales occurred as of, or proximate to, the assessment date of October 1, 2016, as follows:

|   | Address | GLA | Sale Date | Sale Price |
|---|---------|-----|-----------|------------|
| 1 | 1497 Cedar Row | 2,900 SF | 09/07/16 | $470,000 |
| 2 | 114, 14th Street | 2,886 SF | 01/13/17 | $425,000 |
| 3 | 905, 14th Street | 2,900 SF | 07/25/16 | $325,000 |
| 4 | 1425 Willow Ct | 3,200 SF | 05/27/15 | $410,000 |
| 5 | 1167 Buckwald Ct | 3,852 SF | 09/20/16 | $452,000 |

Plaintiff stated that he consulted with a real estate agent/broker who provided him a list of the comparables. He testified that he chose comparables based on GLA and proximity to the assessment date. He stated that he drove by the first three comparables. He noted that since the Subject was in a good condition, he presumed the same of the comparables. Plaintiff sought a reduction of the assessment to $500,000 based on the GLA of the comparables, and since this was what the Subject was worth.

**FINDINGS**

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413

(1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J.Super. 271, 285-86 (App. Div. 1998).

A taxpayer can rebut the presumption by introducing "cogent evidence," i.e. evidence that is "definite, positive, and certain in quality and quantity." Pantasote, supra, 100 N.J. at 413. Plaintiff must present the court with "evidence sufficient to demonstrate the value of the subject property, thereby raising a debatable question as to the validity of the assessment." MSGW, supra, 18 N.J. Tax at 376. Disagreement with an assessment must be "based on sound theory and objective data, rather than on mere wishful thinking." Ibid.

If the court decides that the presumptive correctness is overcome, it can find value based "on the evidence before it and the data that [is] properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The complainant bears the burden of persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

If, at the close of plaintiff's proofs, the court is presented with a motion to dismiss under R. 4:37-2(b), in evaluating whether plaintiff's evidence meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." MSGW, supra, 18 N.J. Tax at 376. If the court decides that the plaintiff did not overcome the presumptive correctness, then the assessment should be affirmed. Ibid. Thus, if a party has not met this burden, the trial court need not engage in a further evaluation of the evidence to make an independent determination of value.

The market approach (or using comparable sales) is the generally accepted appraisal methodology to determine value of residential homes. See Appraisal Institute, The Appraisal of

3

Real Estate 377 (14th ed. 2013) (the comparable sales method is generally appropriate for valuation of a residential property where value is derived "by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices . . . of the comparable properties based on relevant, market-derived elements of comparison"). Market evidence must support any element of comparison that causes "value differences." Id. at 378.

While plaintiff correctly chose sales of residences located in the Township and in the same zone, whose sale date was proximate to the assessment date, deeming them comparable to the Subject based simply upon GLA oversimplifies the valuation technique and process, and the need for qualitative cogent evidence. Presuming that the comparables are all in the same or similar condition as the Subject, (thus, requiring no adjustments to the comparables' sale prices) does not equate to competent or credible evidence. Amenities present or absent in a comparable may or may not add value to that property. See U.S. Life Realty Corp. v. Township of Jackson, 9 N.J. Tax 66, 72 (Tax 1987) ("differences between a comparable . . . and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other."). The court has no way of knowing whether there were elements of comparability that required adjustments to the sale prices to account for superior or inferior features or conditions in either the Subject or the comparables. Value is not a rough average of the unadjusted sale prices of relatively similar types of homes, and valuation is not a mathematical exercise.

Additionally, plaintiff had not personally verified the circumstances of the sale for any comparable. For instance, he was unaware that his comparable 1 was a corner house and at the

intersection of the Subject's street and Cedar Row, which he conceded, would be exposed to a much higher traffic volume when compared to the Subject's location in a cul-de-sac. The same was true of his comparable 2 which he conceded was located on a busy road. He was also unaware whether this comparable was on the market since there was no public record of the sale. Per the Township's records, the last recorded, thus, last known sale was in 2003 for $100,000.[3] He did not know that his comparable 3 was a bankruptcy sale. He conceded that he was surprised at the low price, thus, would not be surprised if it was a distress or bankruptcy sale. That sale was also marked non-usable ("NU") 13 which applies to "[s]ales in proceedings in bankruptcy" and the like. See N.J.A.C. 18:12-1.1(a)(13). The County Board's website also indicated that comparable 4 was marked NU-25, which applies to "[t]ransfers in which the full consideration . . . is less than $100." See N.J.A.C. 18:12-1.1(a)(25). That property first sold 04/24/15 for $410,000 (between individuals as sellers and a Trust as a buyer) and was transferred by the Trust to another Trust for $10 on 06/30/15. Similarly, comparable 5 was marked NU-10 which applies to "[s]ales by guardians, testamentary trustees, executors, and administrators guardians, trustees, executors and administrator," see N.J.A.C. 18:12-1.1(a)(10), with the seller being a Trust and the buyer being the Congregation Derech Hashem, Inc.

The NU codes assigned to each comparable raises a question whether they were arms-length transactions between a willing buyer and a willing seller, neither under a compulsion to buy

---

[3] That sale was also marked as with a non-useable ("NU") code 1 which applies to "[s]ales between immediate family members." See N.J.A.C. 18:12-1.1(a)(1). In developing a credible sales-to-assessment ratio to be used in developing the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Director, Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted). The sales-to-assessment ratio is used to determine the "state school aid distribution," the "assessment discrimination claims by property owners," and also is "adopted in county equalization tables . . . which are used to allocate the cost of county government among a county's municipalities." Id. at 666.

or sell. This not automatically prohibit the consideration of the sales as comparables for valuation purposes. However, if "non-market conditions of sale are detected in a transaction, the sale can be used as a comparable sale but only with care," thus, the "circumstances of the sale must be thoroughly researched . . . [, and any] adjustment should be well supported with data," otherwise the sale should be "discarded" as a comparable. See The Appraisal of Real Estate, supra, at 410.

Plaintiff was unable to establish why the comparables were reliable indicators of value regardless of their non-usable categorization. As explained by this court, "[v]ital to the accuracy and integrity of the sales comparison approach is the premise that information and data must be properly sourced, verified and analyzed to ensure accuracy and to 'better understand the attitudes and motivations of the buyer and seller.'" VBV Realty, L.L.C. v. Township of Scotch Plains, 29 N.J. Tax 548, 564 (Tax 2017) (citation and quotation marks omitted) (rejecting a real estate appraiser's comparable sales because the expert relied on the sales information posted on a County Board's website, MLS listings, and from his discussions with the tax assessors). See also N.J.S.A. 2A:83-1 (a witness providing testimony relating to comparable sales should obtain information from the "owner, seller, purchaser, lessee or occupant . . . or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales").

The burden is upon plaintiff to show that the sale he deems comparable is a reliable indicator of the Subject's market value.[4] The court cannot accept a comparable sale without any

---

[4] Of course, if plaintiff showed the court with credible evidence that each sale with the NU code was verified as being arms-length despite existence of any factors indicating or implying a non-market sale, the Township cannot simply rest on an opposition that the sale is unreliable because it was treated as non-usable by the assessor in developing the Chapter 123 ratios. See Greenblatt v. City of Englewood, 26 N.J. Tax 41, 54 (Tax 2010) ("Simply saying that a sale was determined by the assessor to be non-useable for purposes of the Director's sales ratio study does not render the sale non-useable for valuation purposes."). But plaintiff must first satisfy this court of the sale's reliability. Here, this was not done.

verification of its bona fides.  <u>See</u> <u>Glen Wall Associates v. Township of Wall</u>, 99 <u>N.J.</u> 265, 282 (1985) (the court must "appraise the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value").

In sum, plaintiff's reliance upon the unadjusted sale prices of the comparables because they are same or similar to the Subject in terms of GLA is not cogent or persuasive evidence of their comparability with the Subject, which would be sufficient to render them credible indicators of the Subject's value.  Providing a list of comparable sales with unadjusted sale prices, and asking the court to reduce the assessed value of the Subject somewhere between such sale prices, does not meet a taxpayer's burden of providing "sufficient competent evidence of true value of the (subject) property."  <u>See</u> <u>Siegfried O. v. Township of Holmdel</u>, 20 <u>N.J. Tax</u> 8, 20 (Tax 2002).

The court is mindful that it must strive to find value.  However, as stated in <u>Township of Warren v. Suffness</u>, 225 <u>N.J. Super.</u> 399, 414 (App. Div. 1988), "the Tax Court's right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." (citation and quotation marks omitted).  Thus, the court cannot "arbitrarily assign a value to the property not supported in the record."  <u>Ibid.</u> (citation and quotation marks omitted).  Here, there was no such credible evidence for the court to independently conclude the Subject's value.

## CONCLUSION

For the aforementioned reasons, the court finds that plaintiff failed to produce sufficient evidence to overcome the presumptive validity of the County Board's judgment.

Very truly yours,

Mala Sundar, J.T.C.