NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:   (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

April 13, 2018

David and Katherine O'Malley
Self-Represented

Thomas J. Sateary, Esq.
Lindabury McCormick Estabook & Cooper, P.C.
423 Warren Avenue
Spring Lake, New Jersey 07762

Re:     O'Malley <u>et al.</u> v. Borough of Spring Lake
Block 6, Lot 2
<u>Docket No. 008098-2017</u>

Dear Plaintiffs and Counsel:

This is the court's decision following trial of the above-captioned matter.  Plaintiffs own the above captioned property ("Subject"), in defendant taxing district ("Borough").  For tax year 2017, a revaluation year, they petitioned the Monmouth County Board of Taxation ("County Board") to reduce the Subject's local property tax assessment of $2,028,600 (allocated $1,263,800 to land, and $764,800 to improvements).  The County Board reduced the assessment to $1,991,000 under code 1A ("assessed value exceeds 100%"), allocating the reduction to the improvements. Plaintiffs timely appealed the County Board's judgment to this court.

The Subject is a lot measuring 0.3 acres improved by a two-story single-family residence, built in 1991, with gross living area ("GLA") of 4,055 square feet ("SF").  It is located across from a watershed, Wreck Pond, and is in a FEMA designated flood-risk hazard zone.  Due to flood

*

issues, the Subject was raised so that there are no improvements on the first floor, and stairs from the ground level on both sides of the front of the house provide access to its raised first floor level (making the building's height as effectively 2½ stories). The half-basement is unfinished. Other improvements include a built-in garage, open porch, and a deck.

Plaintiffs selected four comparable sales as evidence of value of the Subject, all located in the Borough, and in close proximity to the Subject as follows:

|   | Address | Built | Lot Size | GLA | Sale Date | Sale Price | Style | Other |
|---|---------|-------|----------|-----|-----------|-----------|-------|-------|
| 1 | 419 Salem Ave | 1990 | 0.19 ac | 2699 SF | 08/29/16 | $1,155,000 | 2-story Colonial | Porch, deck, patio, Wreck Pond behind house |
| 2 | 301 Shore Rd | 1974 | 0.22 ac | 2820 SF | 06/02/16 | $1,385,000 | 2-story Colonial | Porch, deck, patio, across from Wreck Pond |
| 3 | 408 Sussex Ave | 1915 | 0.25 ac | 2315 SF | 04/08/16 | $1,550,000 | 2½ story Colonial | Porch, partial basement |
| 4 | 420 Salem Ave | 1952 | 0.17 ac | 1632 SF | 07/15/16 | $850,000 | 1½ story Cape Cod | Porch, deck, basement |

They noted that none of the comparables had flooding issues as did the Subject, and further that, their 2017 assessments were all much lower than the Subject.

The Borough provided exterior pictures of the Subject and the four comparables (powered by Google). They clearly showed the Subject's superiority in terms of size, style, and quality of materials/construction. It is also readily apparent that all of the comparables' GLA is significantly smaller than the Subject, comparables 3 and 4 are much older, and comparable 4, which is of a different style, has a lot size that is almost 50% smaller than the Subject. None of the comparables are raised, nor are they set back as far from the street as is the Subject. Moreover, comparable 1 was marked with non-usable code 10, which applies to "[s]ales by guardians, testamentary trustees, executors and administrators." See N.J.A.C. 18:12-1.1(a)(10). Although this does not per se indicate that the sale could not be used as a credible indicator of the Subject's value, plaintiffs proffered no proof in this regard. Thus, the court is simply not persuaded that the sales are

comparable, let alone their unadjusted sale prices as being credible indication of the Subject's value.

Plaintiffs maintain that they are not challenging the allocated assessment to the Subject's improvement, rather, desire a reduction of the value allocated to land. They claim that the revaluation company grossly exaggerated the value allocated to land, and failed to consider the severely negative factor of the Subject, viz., its location in a FEMA categorized flood zone, and proximity to Wreck Pond, which collects excess drainage from other surrounding over-developed towns, and causes flooding/soil pollution on the Subject. Plaintiffs provided a letter from the revaluation company, which was a response to their inquiry on how "land calculations" were made, and why no "depreciation" was recognized. The revaluation company explained that it had used the extraction method whereby the contributory value of the dwelling was extracted from the total sale price, the balance being "an indication of the underlying land value." Thus, if property sold for $600,000 and the dwelling is estimated to be currently worth $200,000 (using the "State manual," a requirement), the underlying land value would be $400,000. Plaintiffs claimed that the revaluation company made no investigation of land values in flood zones, and was not cognizant of problems with such types of land.

Plaintiffs also argued that because of the FEMA restrictions, the Subject cannot be further improved with additions such as an in-ground pool, expansion of the driveway or of the residence, and that future buyers must be notified of these strictures. Additionally, the Subject is not close to the ocean. All these factors, per plaintiffs, diminish the Subject's value, which were properly recognized by periodic reduction in prior years' assessments, and justifies restoration of the Subject's 2016 assessment of $1,321,000 (allocated $775,500 to land; $545,500 to improvements), for tax year 2017.

The arguments, while sympathetic, are unpersuasive. The allocation of an assessment between land and improvement is a purely administrative function because the assessment is for the property as a whole, i.e., land and building, which is why when an appeal is filed, the challenge can only be to the entire assessment, not to the allocated portions of the same. See Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 375-377 (App. Div. 2001) (rejecting the taxpayers' argument that the trial court erred "in concluding that they could not prove the 'true value' of their property by challenging only the land portion of the assessment"). Consequently, plaintiffs' characterization of their challenge as isolated to land value is unsustainable.

Additionally, from the property record cards of the Subject and the comparables (provided by the Borough), it appears that the revaluation company assigned the same lot value, and front foot value to the Subject and Comparable 2, which are both on the same street, at $700,000 and $6,000, respectively. It therefore does not appear that differing lot values were applied, rather, the difference was due to lot size and the depth factors. Plaintiffs did not provide any evidence to establish that these values were wrong.

Further, the record cards also show that the Subject and certain comparables' proximity to Wreck Pond was noted and acknowledged by the revaluation company. They do not show any adjustments for this factor. No doubt features such as flooding hazards, or location in a designated high flood risk zone with restrictions on building or expanding improvements, can negatively impact a property's value. Buyers could view flood hazard locations more expensive to maintain due to mandatory flood insurance, with higher risk of property damage, thus, likely higher costs to owners, which in turn could impact value. On the other hand, depending on the area or neighborhood, such as river or ocean front/proximate properties, potential flooding considerations may be offset by the appeal of scenic views, exclusivity of neighborhoods, affluent population,

4

which in turn, could influence the increase in values of such properties.[1] Either way, any negative adjustment to sale prices (in a comparable sales analysis), for flooding hazards must be supported with credible market-based data.

Here, plaintiffs did not provide any evidence that could support a quantified negative adjustment for the flooding factor, which they allege are significantly deleterious to the Subject's value. This was their burden to begin with, and continues to the end of the case. See MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998); Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992). Without any evidence, the court cannot speculate what a reasonable adjustment should be, and what the consequent value should be. The court can determine value "from the evidence," and cannot "arbitrarily assign a value to the property not supported in the record." U.S. Life Realty Corp. v. Township of Jackson, 9 N.J. Tax 66, 79 (Tax 1987).

**CONCLUSION**

The court finds that none of the four comparable sales are persuasive indicators of the Subject's value. Further, the court cannot provide an arbitrary reduction for the Subject's flood hazard zone location without any market-based evidence in the record. Therefore, plaintiffs have failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board, which is affirmed.

Very truly yours,

Mala Sundar, J.T.C.

---

[1] Despite the plaintiffs' testimony, the Borough's assessor stated that people still pay a premium for land in a flood zone due to ocean proximity. He also claimed that there were no restrictions on the property's further improvement or development other than normal zoning requirements, such as seeking a variance. Lastly, he claimed that land values are typically $12-$14 million an acre in the Borough including the Subject's neighborhood.