**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



**MALA SUNDAR**
**JUDGE**

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

September 28, 2020

Gerardo, Justin & Caradonna, Shari
Plaintiffs, Self-Represented

Matthew Goode, Esq.
Arbus, Maybruch & Goode, LLC
Attorney for Defendant

     Re: Gerardo, Justin & Caradonna, Shari v. Township of Aberdeen
       <u>Docket No. 005843- 2020</u>

Dear Plaintiffs and Counsel:

This is the court's decision following trial of the above-captioned matter affirming the judgment of the Monmouth County Board of Taxation ("County Board") for tax year 2020.

Plaintiffs own a residence, a single-family home ("Subject") located in defendant taxing district ("Township"). The Subject is identified on the Township's tax map as Block 376, Lot 3. For tax year 2020, the Township's assessor imposed a local property tax assessment of $313,900. Plaintiffs appealed the same to the County Board which reduced the assessment to $301,000 on grounds the assessment exceeded the Subject's true value.

Plaintiffs timely appealed the County Board's judgment to this court. They contend that the exterior of the Subject (fencing, a large storage shed, and the walkway) is in extremely poor condition, and the extensive shrubbery/trees cause the area to flood heavily during bad weather. They claim that they were unaware of these poor conditions when they purchased the Subject on May 31, 2019 for $306,000 (but obtained $5,000 as concession in closing costs, thus, effectively paid $301,000), and had they known of the issues with the exterior, they would have negotiated






a price far less than what they paid. They stated that they received several cost estimates for replacement of the fencing and shed, which averaged roughly $20,000. Therefore, they maintain, the assessment should be reduced for the exterior's condition, and the Subject's true value should be found as $280,000.

Plaintiffs provided three sales, all in the Township, and in the same zone as the Subject, claiming they were comparable therefore, their sale prices were indicative of the Subject's value. They had not inspected the interiors of any comparable but had driven-by and seen their exteriors. They had not verified the sale details with anyone.

Comparable Sale 1 is located on 845 N Concourse, Keyport, and sold May 16, 2019 for $260,000 after being on the market for 164 days. A cape-styled residence situated on a lot sized 75x100 square feet ("SF"), it has, per the Multiple Listing Service ("MLS") printout, 3 bedrooms and 2 full baths, one with a jacuzzi (but per the Township's property record card or "PRC" has 4 bedrooms and 1 full bath), and an above-ground pool. It is farther from the Bay as compared to the Subject.

Comparable Sale 2 is located on 749 Shore Concourse, Keyport, and sold June 27, 2019 for $270,000 after being on the market for 8 days. A ranch-styled residence situated on a lot sized 53x100 SF, it has, per the MLS, 3 beds and 1 full bath (but per the PRC, 4 beds and 1 full bath), and a fully fenced lot with renovated interior and upgraded appliances. It is farther from the Bay as compared to the Subject and Comparable 1.

Comparable Sale 3 is located on 226 Orchard Street, Keyport, and sold June 19, 2020 (thus after the assessment date) for $275,000 after being on the market for 66 days. A ranch-styled residence situated on a lot sized 50x100 SF, it has, per the MLS, 3 beds and 1 full bath, a large paver patio and garden beds, and an interior in apparently good condition and tiled floors.

2

The Subject is a ranch-styled residence, with 3 beds and 2 full baths, laminate flooring, a redone deck, and is on a lot measuring 75x107 SF. It is closer to the Bay than the three comparables with partial water views. Other than the shed (which is about 24x7 SF), there is no other storage on the Subject. Parking is on the street. Plaintiffs concede that the Subject's interior is well-renovated, with brand new appliances in the kitchen, and updated renovated improvements throughout. They also concede that the MLS description of the Subject's interior was accurate for the most part. They argue however, that if the Subject was offered for sale as of the assessment date, there would be a reduction for the exterior's condition, specifically the poor condition of the fence (which is falling apart), the shed (which has rotted floors thus making it a habitat for animals), and the buckling wooden walkway which is actually made of plywood. Plaintiff's photographs evidence the alleged poor condition of these items.

The Township contends that the Subject's sale price ($310,000) is the best indicator of value. Plaintiffs' buyer's remorse or their lack of inspection of the exterior during the purchase, it argues, does not prove that the sale was not arms-length or that the Subject's value should be reduced.

**ANALYSIS**

A party challenging an assessment has the burden (a) to overcome the presumption of correctness afforded a challenged local property tax assessment, and then, (b) to persuade this court, with credible, objective evidence, why the Subject is over-assessed; and what is or should be, the Subject's value. MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). The presumption "stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). The court can only find value based "on the evidence before it and

3

the data that [is] properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985).

Generally, for residential properties, a comparable sale analysis is used to determine value. Here, plaintiffs provided 3 sales of similar-style single-family residences, all located in the Township, two with sale dates in 2019, thus, proximate to the assessment date.[1]

However, while this generally accepted appraisal methodology employed by plaintiffs assists in overcoming the presumptive correctness of the Subject's assessment, it does not follow that the assessment should therefore be reduced. After examining the evidence presented here, the court is unpersuaded that a change in assessment is warranted.

First, the sale of Comparable 3 was beyond the assessment date of October 1, 2019, thus, is least persuasive as evidence of the Subject's value. Comparable 2 has a smaller lot size, rendering the Subject superior in this aspect. It was unclear whether Comparable 1 has one or two baths since plaintiffs did not inspect the comparable nor verified the accuracy of the MLS description in any manner. If there was one bath, then it could be considered inferior to the Subject in this aspect. Without adjustments made in this regard, their sale prices cannot be considered as a firm credible evidence of the Subject's value. See U.S. Life Realty Corp. v. Township of Jackson, 9 N.J. Tax 66, 72 (Tax 1987) ("differences between a comparable . . . and the subject property are anticipated [and] dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other"); American Cyanamid Co. v. Township of Wayne, 17 N.J. Tax 542, 581 (Tax 1998), aff'd, 19 N.J. Tax 46

_____

[1] The Township did not contend that the comparable sales were not credible indicators of value because they were marked as non-usable by the assessor and the Division of Taxation.

4

(App. Div. 2000) ("without . . . adjustments [to the comparables' sale prices], the sales provide no meaningful indication of the value of the subject property").

Second, the issue here is whether only the poor condition of the fence, shed and walkway in the Subject's exterior merits a decrease in the Subject's value, since plaintiffs concede that the Subject's interior has no factors that could contribute to a negative value. Undisputedly, these items are in poor condition as evidenced by their photographs. Nonetheless, there is no objective or credible evidence that they therefore contribute to a $20,000 diminution of the Subject's true value. For one, the fence is personal property. The shed could also be considered personal property (not living space). Thus, either would not generally merit an assessment or be added to an assessment. Even if the shed has a cost attributed to it in the PRC, which cost is added to the assessment, it is unlikely to be attributed with a significant portion of an assessment due to its associated depreciation.

More importantly, while the shed, fence and walkway are in need of repairs, their poor condition alone is not evidence that the Subject would necessarily sell for less. Buyers could consider these items as insignificant in value compared to the gut-renovated interior. Although plaintiffs testified that they had obtained repair estimates, this information was hearsay. In any event, repair costs do not equate to value. One cannot assume that if the cost to cure is $20,000, the Subject's value is lowered by that amount in the absence of those repairs, or that the true value is computed by simply deducting the estimated costs from the assessed value.

In sum, the court finds that plaintiffs have not provided persuasive evidence to overcome the presumptive correctness of the County Board's judgment, which is therefore affirmed.

Very truly yours,

Mala Sundar, J.T.C.

5