105 N.J. Super. 157 (1969)
251 A.2d 457
JOSEPH A. FEDER, ET AL., PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
CITY OF PASSAIC, RESPONDENT-RESPONDENT AND CROSS-APPELLANT, AND STATE OF NEW JERSEY, ON BEHALF OF THE DIVISION OF TAX APPEALS, RESPONDENT. DAVIDOM REALTY CORP., PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
CITY OF PASSAIC, RESPONDENT-RESPONDENT AND CROSS-APPELLANT, AND STATE OF NEW JERSEY, ON BEHALF OF THE DIVISION OF TAX APPEALS, RESPONDENT. SWANEE ESTATES, INC., PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
CITY OF PASSAIC, RESPONDENT-RESPONDENT AND CROSS-APPELLANT, AND STATE OF NEW JERSEY, ON BEHALF OF THE DIVISION OF TAX APPEALS, RESPONDENT. BERTHA STEIN, PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
CITY OF PASSAIC, RESPONDENT-RESPONDENT AND CROSS-APPELLANT, AND STATE OF NEW JERSEY, ON BEHALF OF THE DIVISION OF TAX APPEALS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1969.
Decided March 19, 1969.
*159 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Carl G. Weisenfeld argued the cause for appellants-cross-respondents (Messrs. Hannoch, Weisman, Stern & Besser, attorneys; Mr. Joseph S. Seidel, of counsel).
Mr. Ladislas F. Feher argued the cause for respondent-cross-appellant (Mr. Charles E. Miller, attorney).
Mr. Arthur J. Sills, Attorney General of New Jersey, filed statement in lieu of brief on behalf of respondent Division of Tax Appeals (Mr. Charles H. Landesman, Deputy Attorney General, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
These consolidated appeals concern the tax assessments on seven parcels of commercial realty in the downtown business section of Passaic, for the tax years 1964, 1965 and 1966. Both the city and the four taxpayers appeal from judgments of the Division of Tax Appeals which reduced assessed valuations on all the properties for all the years in question. The city's brief, however, does not specify error in any judgment, but defends all the judgments against the taxpayers' assault. At oral argument the position of the *160 city was the same. We therefore assume an abandonment of the city's appeals.
The taxpayers' appeals are along two lines: (1) the true values of the respective properties are below the judgments entered by the Division; (2) assessments at 100% of true value would be discriminatory since the average Passaic ratio of assessments to true value as fixed by the State Director of the Division of Taxation (and adjusted by taxpayers' expert), averaged for the years in question, is approximately 82%, and therefore whatever true values are determined for the properties in these appeals should be revised to the stated percentage thereof. Reliance is had upon In re Appeals of Kents 2124 Atlantic Ave. Inc., 34 N.J. 21 (1961) ("Kents," hereinafter). The Division declined to award any relief on the discrimination phases of the appeals.

I
[The court here dealt with the valuation phases of the appeals, affirmed as to certain properties and remanded for further findings and conclusions with respect to others.]
The determinations of the Division as to true value are affirmed in all the appeals except for 692 Main Ave. and 75-79 Hoover Ave. As to those, ultimate determination will depend on the additional findings and conclusions on remand called for above.

II
We turn to consideration of the "discrimination" aspect of the appeals, summarized near the head of this opinion. Kents, supra, holds that where a taxpayer's real property is assessed at a ratio to true value substantially higher than the common level, or, if there is none which the assessor is endeavoring to achieve, substantially higher than the average ratio determined by the State Director of Taxation, then such taxpayer is ordinarily entitled to a reduction of his assessment down to the valuation resulting from application of the Director's figure for the average ratio. 34 N.J., at pp. 33, 34.
*161 The city does not argue before us that its assessor consciously and reasonably effectively undertook to assess all real property in the city at any particular common level for any of the years in question; nor would any fair appraisal of the evidence, which we need not here discuss in detail, allow of any such conclusion. There was some pretense by the assessor at the hearing that he attempted to assess all real property at 100%, but the evidence as a whole, and particularly the Director's sales-ratio studies, belies that assertion. There may have been some effort to assess commercial and industrial property in the rough neighborhood of 100%, but the proofs compel the conclusion that residential properties were assessed (whether consciously or not) on the average at about 65% of their market value. We thus disagree with the finding of the Division that "every effort was made by the assessors to achieve a common level." It is not supported by substantial credible evidence on the whole record. The city does not and may not argue that these commercial properties under appeal are to be limited to relief by the measure of the average ratios of assessment only of commercial properties in the city. Siegal v. City of Newark, 38 N.J. 57 (1962).
The official average ratios of the State Director of Taxation for the tax years here in question were:

 1964  94.33
 1965  84.27
 1966  86.75

As will appear infra, the 1964 figure requires adjustment downward. It is obvious that, even accepting the Division's judgments as representing 100% true value, the original city assessments, which were somewhat higher, were substantially above the official average ratios, and that therefore the present taxpayers qualify, generally speaking, for Kents-type relief.
The opinion of the Division assumed that appealing taxpayers have no grievance under Kents if the average ratios *162 are not substantially below the 100% true value fixed on appeal by the Division. We do not so read Kents. The referent intended in that exposition is the original assessment, not the reduced valuation judgment of the Division. The logical point at which to measure the taxpayer's aggrievement in terms of discrimination is that where he stands before he invokes the quasi-judicial review by the tax boards  i.e., when the city assessment is made in the first place. But even were the Division's interpretation of Kents correct, we would characterize its 100% judgment figures as substantially above the official average ratios (after adjusting the ratio figure for 1964, as appears infra).
The Division also justified refusal of Kents-type relief on the ground that it had had many other appeals on Passaic commercial real estate for the years in question, on some of which large reductions had been granted, and that reductions were probable on other pending such appeals. It was implied that since such reductions were not reflected in the Director's sales studies, they militated against the utility of the average ratios for present purposes. Quite the contrary. Were the original assessments of such other properties in the reduced amount of the judgments of the Division, and any of them the subject of sales involved, the effect would be to further depress the average ratios  a result strengthening the case for Kents-type relief to the present taxpayers rather than refuting it.
The final question for decision is precisely what average ratio figures to apply in these consolidated appeals. In the first place, it is clear that a single averaged figure should be used for all three tax years under appeal, in the interest of relative stability of assessments. City of New Brunswick v. Division of Tax Appeals, 39 N.J. 537, 541 (1963); Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 76 (App. Div. 1965). We find no probative weakness in the official overall average ratios of the State Director for 1965 and 1966, which are, respectively, as noted above, 84.27 and 86.75.
*163 There is, however, a probative defect, for present purposes, in the corresponding official state figure for 1964 (94.33). To understand this, it is necessary to keep in mind that the final official ratio for a given year is arrived at by the use of sales not only during the transaction period applicable to that year (the year beginning July 1 of the prior calendar year) but also sales during the transaction period pertaining to the prior year. See City of Bayonne v. Division of Tax Appeals, 49 N.J. Super. 230, 236 (App. Div. 1958). This is done in order to broaden the sales sampling upon which the ratios are ultimately based. Ibid. But a problem arose in respect of 1964 because in prior years the assessments in Passaic had purportedly been on a 40% basis whereas in 1964 and thereafter they were purportedly on a 100% basis.[1] Because of this special condition the Director, in arriving at his final Passaic 1964 ratios, which normally would have been based on sales for the two-year period preceding July 1, 1963, used sales for the three-year period preceding that date. Without further discussion of the rather complex, distorting effects of this procedure, which have been argued by taxpayers and not refuted by the city, we have concluded that the Director's resulting official 1964 ratio is probably out of line to such extent as to be unreliable for tax equalization purposes. It will therefore be displaced by the 1964 ratio computed on the basis of sales for the transaction period applicable to that single year. This figure is 83.94. The more reliable nature of this statistic, as compared with the Director's official 1964 figure (94.33), is indicated by its closeness not only to the approved figures for 1965 and 1966, noted above (84.27 and 86.75), but to the official ratio for 1967, which is 86.62.
*164 Averaging the ratios we have found reliable for 1964, 1965 and 1966 produces an average of the three of about 85.00. The Division will apply this ratio to the true values ultimately determined in these cases for all tax years under appeal.
Reversed and remanded for further proceedings in the Division of Tax Appeals conforming with this opinion. We do not retain jurisdiction.
NOTES
[1] Although, as held above, there was no genuine 100% common level applicable to all real property in 1964 and thereafter, the aggregate valuations in 1964 and subsequent years were without doubt substantially higher than in 1963 because of the purported change in valuation basis.