**TAX COURT OF NEW JERSEY**



**JOSHUA D. NOVIN**
**Judge**

Morris County Courthouse
Washington & Court Streets
1st Floor, P.O. Box 910
Morristown, New Jersey 07963
Tel: (609) 815-2922, Ext. 54680
Fax: (862) 397-5690

**NOT FOR PUBLICATION WITHOUT THE APPROVAL**
**OF THE TAX COURT COMMITTEE ON OPINIONS**

February 26, 2021

Joseph E. Bock, Esq.
Spiotti & Associates, LLC
271 U.S. Highway 46
Suite F105-106
Fairfield, New Jersey 07004-2471

Dominic DiYanni, Esq.
Eric M. Bernstein & Associates, LLC
34 Mountain Boulevard, Building A
P.O. Box 4922
Warren, New Jersey 07059-4922

   Re: <u>Snyder, John A & Lara G v. Montclair Twp.</u>
      Docket Nos. 007980-2019 and 006425-2020

Dear Mr. Bock and Mr. DiYanni:

This letter constitutes the court's opinion following trial in the above-referenced matters challenging the 2019 and 2020 tax year assessments on plaintiffs' single-family residence.

For the reasons stated more fully below, the court affirms the 2019 and 2020 tax year local property tax assessments.

## I. <u>Procedural History and Factual Findings</u>

John A. Snyder and Lara G. Snyder ("plaintiffs") are the owners of the single-family residence located at 99 Gordonhurst Avenue, Montclair Township, Essex County, New Jersey. The property is identified on Montclair Township's municipal tax map as Block 3502, Lot 49 (the "subject property"). For the 2019 and 2020 tax years, the subject property's local property tax assessment was as follows:






| | | |
|---|---|---|
| Land: | $ 367,100 | |
| Improvements: | $ 651,100 | |
| Total | $1,018,100 | |

The average ratio of assessed to true value, commonly referred to as the Chapter 123 ratio, for Montclair Township ("defendant") for the 2019 tax year is 90.23% and for the 2020 tax year is 89.51%. See N.J.S.A. 54:1-35a(a). When the average ratio is applied to the local property tax assessment, the subject property's implied equalized value is $1,128,339, for the 2019 tax year, and $1,137,415, for the 2020 tax year.

Plaintiffs timely filed direct appeals with the Tax Court challenging the subject property's 2019 and 2020 tax year local property tax assessments. In response, defendant filed counterclaims for the 2019 and 2020 tax years.[1]

The matters were tried to conclusion over the course of one day. During trial, both plaintiffs and defendant offered testimony from State of New Jersey certified general real estate appraisers, who were accepted by the court as experts in the property valuation field, without objection. Each expert prepared an appraisal report that was admitted into evidence by the court.

Based on the evidence presented, the court concludes that the subject property is a 3-story colonial-style, single-family residence constructed in 2004, situated on a .193-acre, or 8,427 square foot lot (8,427/43,560 square feet = .193-acre). The subject property has approximate lot dimensions of 50' width and 168.5' depth. The gross living area of the residence is 3,171 square feet, consisting of 5 bedrooms, 3 full bathrooms, and 2 half-bathrooms (inclusive of a half bathroom in the basement).[2] The first floor of the residence includes a beautifully appointed eat-

---

[1] Upon commencement of trial defendant withdrew its counterclaims.
[2] Plaintiffs' expert opined that the subject property has 4 bedrooms and a home office, and defendant's expert concluded that the subject property has 5 bedrooms. Plaintiffs' expert opined that the subject property consists of 3,170 square feet of gross living area.






in kitchen with dark wood cabinetry, stainless steel appliances, granite countertops, and ceramic tile flooring. In addition, the first floor is finished with stained wood flooring and includes a foyer, a family room, a dining room, a living room, a half bathroom, and a mud room. The second floor includes the master bedroom, a 5-fixture master bathroom, two additional bedrooms, and a 4-fixture bathroom. The master bedroom contains French doors providing access to the second-floor open porch. The third floor includes a bedroom, a bedroom/home office, and a 4-fixture bathroom. The finished basement of the home features an exercise area, a pantry/storage area, a television seating area, a table and seating area, a half bathroom, and a laundry room. The subject property also contains a fireplace, two open porches, a fenced in rear yard, a large rear brick paver patio, and a detached 2-car garage. Plaintiffs acquired the subject property on August 23, 2006, for a reported consideration of $976,000.00.

The subject property is situated in Montclair Township's R-1, One Family Residence District. The minimum lot width requirement in the R-1 zoning district is 60 feet and the minimum lot area is 20,000 square feet. Since the subject property has an approximate lot width of 50 feet and lot area of 8,427 square feet, the subject property is a legally permitted, pre-existing nonconforming parcel within the R-1 zoning district.

The subject property is situated in the Watchung Plaza neighborhood of Upper Montclair, located approximately ½ mile from the Watchung Avenue Station, providing N.J. Transit rail service. The subject property is also located approximately ½ mile from Brookdale Park.

II. **Conclusions of Law**

a. Presumption of Validity

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J.

   

Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. Passaic City, 100 N.J. 408, 413 (1985) (citing Riverview Gardens v. North Arlington Bor., 9 N.J. 167, 174 (1952)). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Twp. v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value; that is, evidence "definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105 (1952). Thus, at the close of plaintiff's proofs, the court must be presented with evidence which raises a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376. "Only after the presumption is overcome with sufficient evidence . . . must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" Greenblatt v. Englewood City, 26 N.J. Tax 41, 52 (Tax 2011) (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

At the close of plaintiffs' proofs, defendant moved to dismiss these matters under R. 4:37-2(b), arguing that plaintiffs failed to overcome the presumption of validity. The court denied defendant's motion and placed a statement of reasons on the record.

However, concluding that the presumption of validity has been overcome, does not equate to a finding by the court that the tax assessment is erroneous. Once the presumption has been overcome, "the court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co. v. Edison Township, 127 N.J. 290, 312 (1992). Although the proofs, when measured against the liberal standards employed in evaluating a motion under R. 4:37-2(b), may be sufficient to overcome the presumption of validity at the close of plaintiff's case-in-chief, "the burden of proof






remain[s] on the taxpayer. . . to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote Co., 100 N.J. at 413).

b. Highest and Best Use

"For local property tax purposes, property must be valued at its highest and best use." Entenmann's Inc. v. Totowa Borough, 18 N.J. Tax 540, 545 (Tax 2000). The determination of the highest and best use of a property is "the first and most important step in the valuation process." Ford Motor Co. v. Edison Twp., 10 N.J. Tax 153, 161 (Tax 1988), aff'd, 127 N.J. 290 (1992). The highest and best use analysis involves the "sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive." Clemente v. South Hackensack Twp., 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015).

Here, plaintiffs' expert and defendant's expert both opined that the highest and best use of the subject property, as improved, was continuation of the subject property's use as a single family residence, and, as vacant, was for development with a single-family residence. The court accepts the experts' highest and best use conclusions.

c. Valuation Approach

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001) (citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 1996), certif. denied, 168 N.J. 291 (2001)). "[T]he answer as to which approach should predominate depends upon the facts in the particular case." WCI-Westinghouse, Inc. v. Edison Twp., 7 N.J. Tax 610, 619 (Tax 1985), aff'd, 9 N.J. Tax 86 (App. Div. 1986).






The sales comparison approach derives an opinion of market value "by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract." Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013). The sales comparison approach involves a "comparative analysis of properties" and requires the expert to focus on the "similarities and differences that affect value…which may include variations in property rights, financing, terms, market conditions and physical characteristics." Id. at 378. "When data is available, this [approach] is the most straight forward and simple way to explain and support an opinion of market value." Greenblatt, 26 N.J. Tax at 53 (citing Appraisal Institute, The Appraisal of Real Estate 300 (13th ed. 2008)).

Plaintiffs' expert and defendant's expert both employed the sales comparison approach to derive an opinion of the subject property's true market value as of each valuation date. In plaintiffs' expert's opinion, the true market value of the subject property was $880,000, as of the October 1, 2018 valuation date, and $915,000, as of the October 1, 2019 valuation date. In defendant's expert's opinion, the true market value of the subject property was $1,115,000, as of the October 1, 2018 valuation date, and $1,105,000, as of the October 1, 2019 valuation date.

Here the court concludes, as did the experts, the sales comparison approach is the most appropriate method to determine the subject property's true market value.

1. Plaintiffs' Expert

Plaintiffs' expert offered testimony that an appraiser associated with his office performed the interior inspection of the subject property, taking interior photographs.[3] However, plaintiffs' expert conducted an inspection of the subject property's exterior and reviewed the interior

---

[3] Plaintiffs' expert explained that he has a family member who would be placed at high-risk if they contracted COVID-19, thus he did not conduct an interior inspection of the subject property.






photographs taken by his associate. In plaintiffs' expert's opinion, the subject property is in "average condition," having an effective age of 10 years and remaining economic life of 40 years. According to plaintiffs' expert, the subject property does not contain high-end finishes. Despite the kitchen being finished with dark wood cabinetry, ceramic tile flooring, equipped with stainless steel appliances, and appointed with granite countertops, in plaintiffs' expert's opinion the kitchen is "typical" of most single-family homes in Montclair. During his testimony, plaintiffs' expert emphasized that the subject property's bathrooms contain "nothing high-end," appointed with ceramic tiling on the floors and walls and do not have marble tiling.

Plaintiffs' expert identified four sales he deemed comparable to the subject property as of the October 1, 2018 valuation date, and four sales he deemed comparable to the subject property as of the October 1, 2019 valuation date. In performing his analysis, plaintiffs' expert submitted that he selected these comparable sales based on "location, location, location," and their comparability. Plaintiffs' expert testified that he telephoned the real estate agents involved in those transactions and verified the terms of sale and the interior and exterior condition of the improvements. The expert further offered that he reviewed the interior photographs contained on the multiple listing service website for each of his comparable sales.

The following chart identifies the four comparable sales and sets forth basic details of each property relied upon by plaintiffs' expert as of the October 1, 2018 valuation date.

| Comparable | #1 | #2 | #3 | #4 |
|---|---|---|---|---|
| Location | 110 Gordonhurst Ave. Montclair, NJ | 97 Gordonhurst Ave. Montclair, NJ | 140 Gordonhurst Ave. Montclair, NJ | 87 Beverly Rd. Montclair, NJ |
| Sale date | June 27, 2018 | July 2, 2018 | August 1, 2018 | October 4, 2018 |
| Sale price | $837,000 | $785,000 | $726,000 | $771,000 |
| Price p.s.f. | $330.18 p.s.f. | $318.72 p.s.f. | $264.96 p.s.f. | $290.94 p.s.f. |
| G.L.A. | 2,535 sq. ft. | 2,463 sq. ft. | 2,740 sq. ft. | 2,650 sq. ft. |
| Lot size | 12,632 sq. ft. | 8,276 sq. ft. | 6,534 sq. ft. | 9,148 sq. ft. |
| Style | Colonial | Colonial | Colonial | Colonial |
| Basement | Finished | Partially Finished | Unfinished | Unfinished |
| Year built | 1917 | 1924 | 1915 | 1924 |






Plaintiffs' expert applied a downward adjustment to comparable sale 1 of $21,162, or $5.00 per square (12,632 – 8,400 = 4,232 sq. ft. x $5.00 p.s.f. = $21,160) to account for its larger lot size. In addition, plaintiffs' expert applied an upwards adjustment to comparable sale 1 of $20,000 to account for it containing one less full bathroom. Finally, plaintiffs' expert made an upwards adjustment to comparable sale 1 of $50,800, or $80.00 per square foot of living area (3,170 – 2,535 = 635 sq. ft. x $80.00 p.s.f. = $50,800) to account for its smaller gross living area.[4] In total, plaintiffs' expert applied $91,962 in gross adjustments and $49,638 in net adjustments to comparable sale 1, resulting in an adjusted sales price of $886,638.

Plaintiffs' expert applied an upwards adjustment to comparable sale 2 of $40,000 to account for it containing one less full bathroom and two less half bathrooms. In addition, plaintiffs' expert applied an upwards adjustment to comparable sale 2 of $56,560 to account for its smaller gross living area. In total, plaintiffs' expert made $96,560 in gross and net adjustments to comparable sale 2, resulting in an adjusted sales price of $881,560.

Plaintiffs' expert applied an upwards adjustment to comparable sale 3 of $20,000 to account for it containing two less half bathrooms. In addition, plaintiffs' expert applied an upwards adjustment to comparable sale 3 of $34,400 to account for its smaller gross living area. Finally, plaintiffs' expert applied an upwards $30,000 for its lack of a finished basement. In total, plaintiffs' expert made $93,730 in gross and net adjustments to comparable sale 3, resulting in an adjusted sales price of $819,730.

Plaintiffs' expert applied an upwards adjustment to comparable sale 4 of $10,000 to account for it containing one less half bathroom. In addition, plaintiffs' expert applied an upwards

---

[4] Plaintiffs' expert applied an $80.00 per square foot gross living adjustment to each comparable sale account for any deviations in gross living area.






adjustment to comparable sale 4 of $41,600 to account for its smaller gross living area. Finally, plaintiffs' expert applied an upwards $30,000 for its lack of a finished basement. In total, plaintiffs' expert made $81,600 in gross and net adjustments to comparable sale 4, resulting in an adjusted sales price of $852,600.

After reconciling the adjusted sales prices, plaintiffs' expert concluded a true market value for the subject property of $880,000, as of the October 1, 2018 valuation date.

The following chart identifies the four comparable sales and sets forth basic details of each property relied upon by plaintiffs' expert as of the October 1, 2019 valuation date.

| Comparable | #5 | #6 | #7 | #8 |
|---|---|---|---|---|
| Location | 116 Beverly Rd. Montclair, NJ | 88 Wildwood Ave. Montclair, NJ | 73 Gordonhurst Ave. Montclair, NJ | 55 Aubrey Rd. Montclair, NJ |
| Sale date | December 14, 2018 | April 4, 2019 | April 26, 2019 | August 26, 2019 |
| Sale price | $960,000 | $779,000 | $860,000 | $960,000 |
| Price p.s.f. | $362.67 p.s.f. | $296.42 p.s.f. | $355.96 p.s.f. | $324.32 p.s.f. |
| G.L.A. | 2,647 sq. ft. | 2,628 sq. ft. | 2,416 sq. ft. | 2,960 sq. ft. |
| Lot size | 7,405 sq. ft. | 9,148 sq. ft. | 8,712 sq. ft. | 16,553 sq. ft. |
| Style | Colonial | Colonial | Colonial | Colonial |
| Basement | Finished | Unfinished | Finished | Finished |
| Year built | 1915 | 1927 | 1925 | 1912 |

Plaintiffs' expert applied a downward adjustment to comparable sale 5 of $96,000, to account for what plaintiffs' expert perceived as its superior condition to the subject property. In addition, plaintiffs' expert applied an upwards adjustment to comparable sale 5 of $41,840 to account for its smaller gross living area. In total, plaintiffs' expert made $137,840 in gross adjustments and -$54,160 in net adjustments to comparable sale 5, resulting in an adjusted sales price of $905,840.

Plaintiffs' expert applied an upwards adjustment to comparable sale 6 of $30,000 to account for it containing one less full bathroom and one less half bathroom. In addition, plaintiffs' expert made an upwards adjustment to comparable sale 6 of $43,360 to account for its smaller gross living area. Finally, plaintiffs' expert applied an upwards $30,000 for its lack of a finished






basement. In total, plaintiffs' expert made $103,360 in gross and net adjustments to comparable sale 6, resulting in an adjusted sales price of $882,360.

Plaintiffs' expert made an upwards adjustment to comparable sale 7 of $10,000 to account for it containing one less half bathroom. In addition, plaintiffs' expert made an upwards adjustment to comparable sale 7 of $60,320 to account for its smaller gross living area. In total, plaintiffs' expert made $70,320 in gross and net adjustments to comparable sale 7, resulting in an adjusted sales price of $930,320.

Finally, plaintiffs' expert applied a downward adjustment to comparable sale 8 of $40,764 to account for its larger lot size. In addition, plaintiffs' expert applied a downwards adjustment to comparable sale 8 of $10,000 to account for it containing an additional full bathroom.[5] Plaintiffs' expert made an upwards adjustment to comparable sale 8 of $16,800 to account for its smaller gross living area. In total, plaintiffs' expert made $67,565 in gross adjustments and -$33,964 in net adjustments to comparable sale 8, resulting in an adjusted sales price of $926,036.

After reconciling the adjusted sales prices, plaintiffs' expert concluded a true market value for the subject property of $915,000, as of the October 1, 2019 valuation date.

2. Defendant's Expert

Similar to plaintiffs' expert, defendant's expert testified that an appraiser associated with his office performed the interior inspection of the subject property, taking interior photographs.

---

[5] 55 Aubrey Road, Montclair, New Jersey, is identified as plaintiff's expert's comparable sale #8 and defendant's expert's comparable sale #5. Plaintiffs' expert's report states that the property contains 4 full bathrooms and 1 half bathroom, while defendant's expert's report states that the property contains 3 full bathrooms and 1 half bathroom. The discrepancy in the number of bathrooms was not made clear by the parties. However, the court attributes this difference to plaintiffs' expert's practice of attributing a value to all bathrooms in a home, and defendant's expert's practice of attributing no value to basement bathrooms.


Interpreter


ADA
Americans with
Disabilities Act


ENSURING
AN OPEN DOOR TO
JUSTICE



Defendant's expert conducted an inspection of the subject property's exterior and reviewed the interior photographs taken by his associate.

In defendant's expert's opinion, the subject property is in good overall condition and due to having been constructed in 2004, its systems and components are in superior condition to other single-family residences in Montclair.

Defendant's expert identified four sales he deemed comparable to the subject property as of the October 1, 2018 valuation date, and four sales he deemed comparable to the subject property as of the October 1, 2019 valuation date. Defendant's expert testified that he telephoned the real estate agents involved in those transactions and verified the terms of sale and the interior and exterior condition of the improvements. The defendant's expert further testified that he reviewed the interior photographs contained on the multiple listing service website for each of his comparable sales.

The following chart identifies the four comparable sales and sets forth basic details of each property relied upon by defendant's expert as of the October 1, 2018 valuation date.[6]

| Comparable | #1 | #2 | #3 | #4 |
|---|---|---|---|---|
| Location | 115 Beverly Rd. Montclair, NJ | 392 N. Fullerton Ave. Montclair, NJ | 45 Carolin Rd. Montclair, NJ | 177 Lorraine Ave. Montclair, NJ |
| Sale date | July 3, 2018 | July 10, 2018 | August 5, 2018 | November 13, 2018 |
| Sale price | $977,000 | $915,000 | $956,000 | $1,087,000 |
| Price p.s.f. | $317.52 p.s.f. | $298.34 p.s.f. | $294.15 p.s.f. | $363.79 p.s.f. |
| G.L.A. | 3,077 sq. ft. | 3,067 sq. ft. | 3,250 sq. ft. | 2,988 sq. ft. |
| Lot size | .29 acres. | .21 acres | .20 acres | .35 acres |
| Style | Colonial | Colonial | Colonial | Colonial |
| Basement | Unfinished | Finished | Finished | Finished |
| Year built | 1919 | 1923 | 1922 | 1910 |

---

[6] In undertaking his adjustment analysis, defendant's expert did not consider the half-bathroom located in the subject property's basement. Thus, defendant's expert viewed the subject property as having 3 full bathrooms and 1 half-bathroom for adjustment purposes.





Defendant's expert applied an upwards adjustment to comparable sale 1 of $97,000, to account for what defendant's expert opined was an inferior condition to the subject property. In addition, defendant's expert applied an upwards adjustment to comparable sale 1 of $25,000 to account for its lack of a finished basement. In total, defendant's expert made $122,000 in gross and net adjustments to comparable sale 1, resulting in an adjusted sales price of $1,099,000.

Defendant's expert applied an upwards adjustment to comparable sale 2 of $91,500 to account for what defendant's expert opined was an inferior condition to the subject property. Defendant's expert further applied an upwards adjustment of $50,000 to comparable sale 2 to account for it containing one less full bathroom than the subject property. In addition, defendant's expert applied an upwards adjustment to comparable sale 2 of $20,800, or $200.00 per square foot of living area (3,171 − 3,067 = 104 sq. ft. x $200.00 p.s.f. = $20,800) to account for its smaller gross living area.[7] In total, defendant's expert made $162,300 in gross and net adjustments to comparable sale 2, resulting in an adjusted sales price of $1,077,300.

Defendant's expert applied an upwards adjustment to comparable sale 3 of $95,600, to account for what defendant's expert opined was an inferior condition to the subject property. In total, defendant's expert made $95,600 in gross and net adjustments to comparable sale 3, resulting in an adjusted sales price of $1,051,600.

Defendant's expert applied an upwards adjustment to comparable sale 4 of $108,700, to account for what defendant's expert opined was an inferior condition to the subject property. In addition, defendant's expert applied an upwards adjustment to comparable sale 4 of $36,600, to

---

[7] Defendant's expert applied a $200.00 per square foot adjustment to each comparable sale that possessed gross living area deviating more than 100 square feet from the subject property.

   

account for its smaller gross living area.  In total, defendant's expert made $145,300 in gross and net adjustments to comparable sale 4, resulting in an adjusted sales price of $1,232,300.

After reconciling the adjusted sales prices, defendant's expert concluded a true market value for the subject property of $1,115,000, as of the October 1, 2018 valuation date.

The following chart identifies the four comparable sales and sets forth basic details of each property relied upon by defendant's expert as of the October 1, 2019 valuation date.[8]

| Comparable | #5 | #6 | #7 | #8 |
|---|---|---|---|---|
| Location | 55 Aubrey Rd. Montclair, NJ | 106 Summit Ave. Montclair, NJ | 181 Wildwood Ave. Montclair, NJ | 116 Beverly Rd. Montclair, NJ |
| Sale date | August 26, 2019 | August 7, 2019 | September 3, 2019 | December 14, 2018 |
| Sale price | $960,000 | $975,000 | $931,000 | $960,000 |
| Price p.s.f. | $324.32 p.s.f. | $332.31 p.s.f. | $282.81 p.s.f. | $362.67 p.s.f. |
| G.L.A. | 2,960 sq. ft. | 2,934 sq. ft. | 3,292 sq. ft. | 2,647 sq. ft. |
| Lot size | .37 acres | .24 acres | .36 acres | .16 acres |
| Style | Colonial | Colonial | Colonial | Colonial |
| Basement | Finished | Finished | Unfinished | Finished |
| Year built | 1912 | 1925 | 1926 | 1915 |

Defendant's expert applied an upwards adjustment to comparable sale 5 of $96,000 to account for what defendant's expert opined was an inferior condition to the subject property. Defendant's expert further applied an upwards adjustment to comparable sale 5 of $42,200 to account for its smaller gross living area.  In total, defendant's expert made $138,200 in gross and net adjustments to comparable sale 5, resulting in an adjusted sales price of $1,098,200.

Defendant's expert applied an upwards adjustment to comparable sale 6 of $97,500 to account for what defendant's expert opined was an inferior condition to the subject property. Defendant's expert further applied an upwards adjustment to comparable sale 6 of $47,400 to

---

[8]  In undertaking his adjustment analysis, defendant's expert did not consider the half-bathroom located in the subject property's basement.  Thus, defendant's expert viewed the subject property as having 3 full bathrooms and 1 half-bathroom for adjustment purposes.






account for its smaller gross living area. In total, defendant's expert made $144,900 in gross and net adjustments to comparable sale 6, resulting in an adjusted sales price of $1,119,900.

Defendant's expert applied an upwards adjustment to comparable sale 7 of $93,100 to account for what defendant's expert opined was an inferior condition to the subject property. Defendant's expert further applied a downwards adjustment to comparable sale 7 of $24,200 to account for its larger gross living area. In addition, defendant's expert applied an upwards adjustment to comparable sale 7 of $25,000 to account for its lack of a finished basement. In total, defendant's expert made $142,300 in gross adjustments and $93,900 in net adjustments to comparable sale 7, resulting in an adjusted sales price of $1,024,900.

Defendant's expert applied an upwards adjustment to comparable sale 8 of $96,000 to account for what defendant's expert opined was an inferior condition to the subject property. Defendant's expert further applied an upwards adjustment to comparable sale 8 of $104,800 to account for its smaller gross living area. In addition, defendant's expert applied an upwards adjustment to comparable sale 8 of $10,000 to account for its lack of a two-car garage. In total, defendant's expert made $210,800 in gross and net adjustments to comparable sale 8, resulting in an adjusted sales price of $1,170,800.

After reconciling the adjusted sales prices, defendant's expert concluded a market value for the subject property of $1,105,000, as of the October 1, 2019 valuation date.

d. Analysis

The court highlights that the unadjusted sales prices, per square foot, of the eight sales relied on by plaintiffs' expert and defendant's expert are not very dissimilar. As of the October 1, 2018 valuation date, plaintiffs' expert's four unadjusted sales range from $264.96 to $330.18 per square foot, with a median value of $304.83, and defendant's expert's four unadjusted sales range






from $294.15 to $363.79 per square foot, with a median value of $307.93. Moreover, as of the October 1, 2019 valuation date, plaintiffs' expert's four sales range from $296.42 to $362.67 per square foot, with a median value of $340.14, and defendant's expert's four unadjusted sales range from $282.81 to $362.67 per square foot, with a median value of $328.31.

Accordingly, the court's decision in these matters turns on issues of quantity and quality. Specifically, an analysis of the quantity of adjustments applied to each sale rendering it comparable to the subject property. Additionally, the court must focus on the quality or reasonableness of the adjustments applied, which adjustments must be supported by credible, market derived data. In undertaking a sales comparison approach, a substantial similarly must exist between the subject property and the comparable properties. "Evidence of comparable sales is effective in determining value only where there is a substantial similarity between the properties." Venino v. Borough of Carlstadt, 1 N.J. Tax 172, 175 (Tax 1980), aff'd o.b. 4 N.J. Tax 528 (App. Div. 1981). However, by definition, comparability does not require properties to be identical, "differences between a comparable property and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other." U.S. Life Realty Corp. v. Jackson Twp., 9 N.J. Tax 66, 72 (Tax 1987). Thus, a fundamental predicate of the comparable sales approach requires that the evidence "be based on 'sound theory and objective data', rather than on mere wishful thinking." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376 (quoting FMC Corp. v. Unmack, 92 N.Y.2d 179, 188 (1998)).

After researching the marketplace and collecting data, an appraiser must carefully scrutinize the data by focusing on the "similarities and differences that affect value . . . which may include variations in property rights, financing, terms, market conditions and physical






characteristics." The Appraisal of Real Estate at 378. The appraiser must establish appropriate "elements of comparison for a given appraisal through market research and support those conclusions with market evidence." Id. at 390. Adjustments "must have a foundation obtained from the market" and not be based merely on subjective observations and/or personal experience. Greenblatt, 26 N.J. Tax at 55. Hence, the probative value of the comparable analysis hinges upon the similarities which can be drawn, and the objective market data utilized to support adjustments thereto.

1. Adjustments

A. Lot Size

In determining his lot size adjustments, plaintiffs' expert offered testimony that he performed a paired sales analysis of two comparable sales referenced in his appraisal report. However, plaintiffs' expert's appraisal report fails to identify how he extracted the lot size adjustments from the two comparable sales identified in his paired set. Instead, plaintiffs' appraisal report offers only that "[a] paired sales analysis revealed that an adjustment of $5.00 per square foot of land was warranted." Moreover, during trial plaintiffs' expert offered that he conducted a "paired sales analysis between comparables 1 and 2, . . . these two sales are very comparable, they are right across the street from each other . . . one has a 8,276 square foot lot, one has a 12,632 square foot lot, right there . . . we have a decent size there that we can adjust on . . . they are very similar in size, we made a small adjustment for bathroom, nothing that is really going to affect this analysis, and that analysis showed a paired sales analysis adjustment of $6.02 per square foot." However, based on a review of plaintiffs' expert's report and the paucity of plaintiffs' expert's testimony on comparability, it is impossible for the court to empirically conclude that comparable sale 1 and 2 contain no other material distinctions that would account






for their difference in sales price. Significantly, the court's review of the multiple listing disclosure for comparable sale 2 contained in plaintiffs' expert's addendum discloses that it has a "renovated kitchen has beautiful granite counters, attractive subway tile back splash with decorative accents, large farmer's sink, spacious breakfast bar with overhead pendant lighting, stainless appliances, under-counter microwave, large pantry. . . ." The listing further details that comparable sale 2 contains "[a] huge main bath featur[ing] granite counters, marble floors, a whirlpool tub, a huge shower with frameless glass." Yet, the multiple listing disclosure for comparable sale 1, also contained in the addendum to plaintiffs' expert's report, discloses no interior renovations, no references to granite countertops, no references to bathroom marble floors, and no references to the quality of the fixtures in the master bathroom.[9] In sum, the court finds plaintiffs' expert's lot size paired sales analysis and the lot size adjustment not reliable.[10]

### B. Room Count/Bathrooms

In computing the adjustment to be applied for the lack or presence of a full bathroom or half-bathroom, plaintiffs' expert's report states "[c]omparable sales were adjusted at $20,000 for full-bathrooms and $10,000 for half bathrooms." Plaintiffs' expert's appraisal report contains no further market analysis, statistics, data, or authority for such adjustments. Moreover, during trial plaintiffs' expert offered that he "made adjustments across the board $20,000 for full bathrooms, and $10,000 for half bathrooms." To attempt to justify his adjustment, plaintiffs' expert explained that "I review hundreds of comparable sales a year, in addition I review Marshall & Swift, not only is there the cost of the bathroom, but there is the perceived market value of a bathroom, in my

---

[9]  Plaintiffs' expert's appraisal report failed to include interior photographs of any of his comparable sales. Thus, the court was unable to gauge whether renovations or improvements were undertaken to the interiors or whether they were all in substantially a similar condition.

[10]  Defendant's expert did not employ an adjustment for lot size in his appraisal report.

   

opinion $20,000 is a fair adjustment for a full bathroom." However, plaintiffs' expert failed to provide any meaningful insight regarding how he reached his conclusion of the market derived value of a full bathroom or half bathroom. When the opinion of an expert is offered "[w]ithout explanation as to the basis, the opinion of the expert is entitled to little weight. . . ." <u>Dworman v. Tinton Falls</u>, 1 N.J. Tax 445, 458 (Tax 1980). Here, plaintiffs' expert's bathroom adjustment lacks any meaningful explanation of the basis for his opinion.

Conversely, defendant's expert's appraisal report states that "[t]he disparities in the number of baths has been adjusted at $50,000.00 for a full bath and if warranted, $25,000.00 for a half bath. In support of this adjustment, we have prepared a paired sale analysis in which a market extracted adjustment for a full bath has been determined." Defendant's expert's appraisal report and his trial testimony then detailed the paired sale analysis conducted analyzing two similarly sized residences, constructed during the same time period and renovated, having similar lot sizes, located on the same street in Montclair, and having sold within sixty days of one another in 2017. Defendant's expert's report and trial testimony was that the $50,000 sales price disparity arose from the lack of an additional full bathroom in one of the sales. Accordingly, defendant's expert concluded that a $50,000 adjustment was warranted for a full bathroom and $25,000 adjustment warranted for a half bathroom. Defendant's expert further opined that no value should be attributed to a full or half bathroom located in the basement of a home. Therefore, he made no adjustment for the presence or lack of a full or half bathroom in the basement of any comparable sale.

Based on the evidence and testimony adduced during trial, the court finds defendant's expert's bathroom paired sale analysis adjustment to be more credible and supported by market derived data. Accordingly, the court accepts defendant's expert's adjustment of $50,000 for a full bathroom and $25,000 for a half bathroom. However, the court finds plaintiffs' expert's approach,






which accounts for the lack of or presence of a full or half bathroom in the basement of each comparable sale, to be more reflective of market considerations. Therefore, the court will apply the above-referenced adjustment based on the presence or absence of a full or half bathroom in the basement of each comparable sale.

### C. Basement Finish

Plaintiffs' expert and defendant's expert applied similar adjustment amounts for basement finishes. In plaintiffs' expert's opinion, an adjustment of $30,000 is reasonable to account for a finished basement. Similarly, defendant's expert opined that in the subject property's market a $25,000 adjustment is appropriate for a finished basement.

The court finds defendant's expert's conclusion that a $25,000 adjustment appropriately accounts for a finished basement to be credible. Accordingly, the court accepts a $25,000 adjustment for a finished basement.

### D. Gross Living Area

In determining the gross living area adjustments to be applied, plaintiffs' expert's appraisal report states that "[a] combination of a paired sales analysis between comparable sales [7] and 8 and consultation of Marshall & Swift support an adjustment of $80 per square foot of GLA."[11] However, plaintiffs' expert's report fails to identify how the gross living area adjustments were extracted from the two comparable sales identified in the paired set. Moreover, during trial plaintiffs' expert offered testimony that in performing his paired sales analysis of comparable sales 7 and 8 that "they are very similar properties, we made adjustments for what they are not similar

---

[11] Plaintiffs' expert's appraisal report identifies the two comparable sales used in the paired sales analysis as comparable sale 6 and 8. However, during trial, plaintiffs' expert explained that his report contains a typographical error and that he used comparable sales 7 and 8 to perform his paired sales analysis.







for, and when you account for the difference in building size it came to a $74.99 adjustment. We also reviewed Marshall & Swift and . . . you have to consider a few things, the quality of the house, you also have to consider depreciation, and when we did that, we came to a value of $95.79. So, we had $74.99 and $95.79 and based on my analysis of comparable sales in the area, and my general knowledge of the market I though $80.00 per square foot was an appropriate adjustment for building size." However, plaintiffs' expert failed to identify what other adjustments he employed to comparable sales 7 and 8 to account for their perceived differences. Moreover, plaintiffs' expert did not identify the class, quality, or condition factors he applied under the Marshall & Swift Cost Tables to discern an estimated cost for living area, nor did he delineate the depreciation factor that he utilized, or how he determined that depreciation factor. Rather, plaintiffs' expert's determination was based on subjective observations and personal experience, and not adequately supported by market data. In sum, the court finds plaintiffs' expert's gross living area paired sales analysis and the gross living area adjustment not reliable.

Defendant's expert's appraisal report states that "we have developed a paired sale analysis which indicates an adjustment of $200.00 per square foot for dwelling size differences." Defendant's expert's appraisal report then details the paired sale analysis conducted analyzing two residences, constructed during the same time period and recently renovated, and located in Montclair. However, the court has material concerns over the accuracy of defendant's expert's paired sale analysis. First, the court observes that the lot size of the two sales relied on are materially disparate, one having more than twice the lot area than the other (.30-acre versus .75-acre). Additionally, the court observes that the sales were consummated approximately 9 months apart from one another, one being sold in September 2017 and the other being sold in June 2018. The reliability of a paired data analysis is predicated on "the premise that when two properties are






equivalent in all respects but one, the value of the single difference can be measured by the difference in price between the two properties." The Appraisal of Real Estate at 398. Here, the properties employed in defendant's expert's paired sale analysis are not alike in all respects except gross living area. Accordingly, other factors may have impacted or influenced the sale prices of the two sales employed in defendant's expert's paired sales analysis. For instance, if the disparate lot size of the two sales influenced the sales price, then defendant's expert's concluded gross living area adjustment is inaccurate.

Thus, the court has doubts regarding the accuracy and integrity of the gross living area adjustments applied by both plaintiffs' expert ($80.00 per square foot) and defendant's expert ($200.00 per square foot) that cannot be reconciled. Nonetheless, the court is mindful of its obligation "to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question." Glen Wall Associates v. Wall Twp., 99 N.J. 265, 280 (1985) (citing New Cumberland Corp. v. Roselle Bor., 3 N.J. Tax, 345, 353 (Tax 1981)). However, the court is conscious that its independent determination of value must be based "on the evidence before it and the data that are properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985).

Accordingly, the court has engaged in an independent review and analysis of the comparable sales offered by plaintiffs' expert and defendant's expert to discern whether and how the marketplace accounts for minor deviations in gross living area. The court's review of that information discloses that in this marketplace and during the relevant time periods, when the properties are equivalent in all facets, except for minor deviations in gross living area, the gross living area deviations do not play a role in the determination of price.






For example, the court has analyzed defendant's expert's comparable sale 5 and 7, which are similarly styled homes, sold within ten days of each other, comprise identical lot sizes, were constructed during the same time period, are both in good condition, and both have two-car garages. The differences between the two properties consist of gross living area, approximately 332 square feet, and a finished basement. However, both experts agree that the presence of a finished basement can be accounted for by an adjustment of between $25,000 to $30,000. Accordingly, adjusting comparable sale 7 upwards by $25,000 to account for its unfinished basement, results in an adjusted sale price of $956,000 ($931,000 + $25,000 = $956,000). Thus, analyzing the adjusted sales price of $956,000 for comparable sale 7 to the $960,000 sales price of comparable sale, the 332 square foot difference in gross living area seemingly played no role in the derivation of sales price.

Additionally, the court analyzed defendant's expert's comparable sale 2 and 3, which are similarly styled homes, sold within one month of each other, comprise similar lot sizes, were constructed during the same time period, are both in good condition, and both have two-car garages. The differences between the two properties consist of gross living area, approximately 183 square feet, and full bathrooms. Applying a $50,000 adjustment to comparable sale 2 to account for an additional full bathroom results in an adjusted sale price of $965,000 ($915,000 + $50,000 = $965,000). Thus, analyzing the adjusted sales price of $965,000 of comparable sale 2 to the $956,000 sales price of comparable sale 3, the 183 square foot difference in gross living area again seemingly played no role in the derivation of sales price.

Accordingly, the court will employ no gross living area adjustment to any comparable sale containing a gross living area deviation of 350 square feet or less than the subject property. However, because the court finds plaintiffs' expert's and defendant's expert's gross living area






adjustments not reliable, the court possesses insufficient market data to evaluate alleged comparable properties with gross living area deviations exceeding 350 square feet.

Correspondingly, the court will strike from the court's consideration in determining the subject property's true market value those comparable sales containing gross living area deviations exceeding 350 square feet as the court is unable to appropriately gauge the adjustment to be applied. As a result, the court excludes from consideration plaintiffs' expert's comparable sales 1, 2, 4, 5, 6, and 7, and defendant's expert's comparable sale 8.

E. Condition

Both experts agreed that property condition plays a role in the determination of true market value. Plaintiffs' expert's report states that "[a] paired sales analysis revealed that comparable sales in superior condition sold for approximately 11% more than comparable sales in similar condition to the subject property. Our experience in the subject market area told us that a 10% adjustment for condition was appropriate." Similarly, defendant's expert's report states that "[b]ased on discussions with local real estate agents and investors, with consideration given to the degree of updating in the comparable sales, we have applied an average adjustment of 10% of the purchase price in each instance for overall condition (as well as age). The adjustment is also based on a review of the interior photographs from the GSMLS along with a brief discussion with the real estate agents for each of the transactions."

Here, in opining on the issue of condition, plaintiffs' expert focused on his perceptions of the quality of the interior finishes in the subject property's bathroom and kitchen when compared to that of the comparable sales. Plaintiffs' expert offered that the subject property is in "average condition," concluding that the kitchen is "typical" of most homes in Montclair, containing "nothing high-end." Conversely, defendant's expert focused both on interior finishes and the






subject property's age as a consideration of condition, when analyzed against the comparable sales. Thus, properties constructed approximately 100 years ago, that have been maintained or updated, but their core electrical, heating, and plumbing systems not wholly replaced or updated he characterized as having "old bones." Based on defendant's expert's review of the multiple listings and discussions with real estate brokers involved in the transactions, if the homes continued to possess items such as cast iron radiators and "knob-and-tube" electrical systems, an adjustment was warranted to account for the lack of the updated electrical, heating, and plumbing system possessed by the subject property.[12]

Here, the subject property was constructed in 2004 and possesses plumbing, heating, and electrical systems meeting or satisfying Montclair's then existing building code standards. Conversely, the comparable sales relied on both plaintiffs' expert and defendant's expert were constructed between 1910 and 1927 and, unless materially renovated, contained core plumbing, heating, and electrical systems that met building code standards approximately a century ago. Thus, the court finds defendant's expert's basis, rationale, and conclusions for applying a 10% condition adjustment to comparable sales constructed a century ago is reasonable. Therefore, the court will accept defendant's expert's 10% age/condition adjustment.

---

[12] Knob-and-tube wiring was "an early standardized method of electrical wiring in buildings, in common use in North America from about 1880 to the 1930s. It consisted of single-insulated copper conductors run within wall or ceiling cavities, passing through joist and stud drill-holes via protective porcelain insulating tubes, and supported along their length on nailed-down porcelain knob insulators. . . Knob and tube wiring was eventually displaced from interior wiring systems because of the high cost of installation compared with use of power cables, which combined both power conductors of a circuit in one run (and which later included grounding conductors). At present, new knob and tube installations are permitted in the U.S. only in a few very specific situations listed in the National Electrical Code, such as certain industrial and agricultural environment." Wikipedia (last visited February 25, 2021), Knob-and-tube wiring - Wikipedia.






2.   Reconciliation/Conclusion of True Market Value

"The trial judge as the factfinder is not bound by the opinion valuation of the experts on either side.  Just as a jury, a judge may adopt 'so much of it as appears sound, reject all of it, or adopt all of it.'"  Riorano, Inc. v. Weymouth Twp., 4 N.J. Tax 550, 564 (Tax 1982) (quoting State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932)).

For the reasons detailed above, the following charts reconcile the adjustments offered by the experts, accepted by the court, and applied to each comparable sale found by the court to be credible evidence of true market value as of the October 1, 2018, and October 1, 2019 valuation dates.

| October 1, 2018 valuation date | | | | | |
|---|---|---|---|---|---|
| Comparable | Defendant #1 | Defendant #2 | Defendant #3 | Defendant #4 | Plaintiff #3 |
| Location | 115 Beverly Rd. Montclair, NJ | 392 N. Fullerton Ave. Montclair, NJ | 45 Carolin Rd. Montclair, NJ | 177 Lorraine Ave. Montclair, NJ | 140 Gordonhurst Ave. Montclair, NJ |
| Sale price | $977,000 | $915,000 | $956,000 | $1,087,000 | $726,000 |
| Adjustments<br>• Age/Condition<br>• Fin. Basement<br>• Full Bath<br>• Half Bath | + 97,700<br>+ 25,000 | + 91,500<br><br>+ 50,000 | + 95,600 | + 108,700 | + 72,600<br>+ 25,000<br><br>+ 50,000[13] |
| Adjusted price | $1,099,700 | $1,056,500 | $1,051,600 | $1,195,700 | $873,600 |

According equal weight to each of the above-referenced five comparable sales, the court concludes the subject property's true market value, as of the October 1, 2018, valuation date is $1,056,000.

| October 1, 2019 valuation date | | | |
|---|---|---|---|
| Comparable | Defendant #5/Plaintiff #8 | Defendant #6 | Defendant #7 |
| Location | 55 Aubrey Rd. Montclair, NJ | 106 Summit Ave. Montclair, NJ | 181 Wildwood Ave. Montclair, NJ |
| Sale price | $960,000 | $975,000 | $931,000 |
| Adjustments<br>• Age/Condition<br>• Fin. Basement<br>• Full Bathroom | + 96,000<br><br>- 50,000 | + 97,500 | + 93,100<br>+ 25,000 |
| Adjusted price | $1,006,000 | $1,072,500 | $1,049,100 |

---

[13]  Plaintiffs' expert's comparable sale 3 has two less half bathrooms than the subject property.






According equal weight to each of the above-referenced three comparable sales, the court concludes the subject property's true market value, as of the October 1, 2019 valuation date is $1,049,000.

3. Application of Chapter 123 Ratio

Having reached a conclusion of the true market value of the subject property, the court will turn its attention to a determination of the correct assessment for the 2019 and 2020 tax years.

Under N.J.S.A. 54:51A-6(a), commonly referred to as Chapter 123, when the court is satisfied in a non-revaluation year by the evidence presented "that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property. . . ." N.J.S.A. 54:51A-6(a). This process involves application of the Chapter 123 common level range. N.J.S.A. 54:1-35a(b).

For the 2019 tax year, the ratio of assessed value, $1,018,100, to true market value, $1,056,000, yields a ratio of 96.41% ($1,018,100/$1,056,000 = 96.41%), which falls between the upper limit (100%) and the lower limit (76.70%) of the Chapter 123 common level range. Consequently, no reduction to the subject property's 2019 tax year assessment is warranted.

For the 2020 tax year, the ratio of assessed value, $1,018,100, to true market value, $1,049,000, yields a ratio of 97.05% ($1,018,100/$1,049,000 = 97.05%), which falls between the upper limit (100%) and the lower limit (76.70%) of the Chapter 123 common level range. Consequently, no reduction to the subject property's 2020 tax year assessment is warranted.






Accordingly, judgments affirming the subject property's 2019 and 2020 local property tax assessments shall be entered.

Very truly yours,

Hon. Joshua D. Novin, J.T.C.




